[Civ. No. 15933.   First Dist., Div. One.   Jan. 26, 1955.]

H. GLENN LAWLER, Appellant, v. H. P. GLEASON, Respondent.

Benjamin D. Frantz and William E. Dopkins for Appellant.

J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Chief Assistant District Attorney, and Richard H. Klippert, Deputy District Attorney, for Respondent.

PETERS, P. J.—H. Glenn Lawler filed a complaint containing three counts. The first count is directed against Max and Ernest Manig and Sheriff Gleason. It is an action for declaratory relief seeking a declaration of the rights of the parties under various certificates of redemption issued by the sheriff, to determine whether a tender by Max Manig of $3,660.93 was sufficient to redeem rather than $10,469.05 demanded by plaintiff, and to determine whether Max Manig was legally capable of redeeming. The second cause of action names Max, Ernest and Paul Manig as defendants and seeks to quiet Lawler's title to the real property against the claims of the named defendants. The third cause of action seeks a writ of mandate to compel the sheriff to make and record a sheriff's deed to the property and to deliver it to Lawler.

Max Manig demurred to the complaint, but his demurrer was overruled. The propriety of this ruling is not involved on this appeal. Sheriff Gleason filed a general demurrer and also specially demurred on the ground of a "misjoinder of parties defendant." The trial court, by general order, sustained the sheriff's demurrer without leave to amend. From the judgment entered on this order plaintiff prosecutes this appeal.

The real property involved in this litigation, and some of the parties, have been before this court on a prior occasion. In *Manig v. Bachman,* 127 Cal.App.2d 216 [273 P.2d 596], the trial court, subject to redemption rights, quieted title to the property in Lawler against the claims of Max Manig. This judgment was reversed and the cause returned to the trial court for further proceedings. The history of the property is set forth in that opinion and need not again be related in detail. Suffice it to say that recorded title to the property was in Ernest Manig from October 21, 1949, until February 15, 1952. All during this period actual title was in Max Manig who, since May 1, 1947, had an unrecorded deed to the property from Ernest, which he did not record until February 15, 1952.

Lawler's claim to the property is based on the following facts: In 1951 various creditors of Ernest Manig levied on the property. These creditors all secured judgments against Ernest Manig. One Bachman had the first lien, followed in order by Pritchett, Lamondo and then Lawler. Lawler came into the picture on August 9, 1951, when he sued Ernest and attached the property. He secured his judgment for over $6,000 against Ernest on January 4, 1952. All during these

periods the real property stood of record in the name of Ernest.

Pritchett instituted an execution sale to collect on his judgment, and purchased the property on December 11, 1951, at that sale, which was conducted by Gleason, the sheriff. Shortly thereafter Lawler purchased the Lamondo judgment. Then on February 8, 1952, Lawler, as a junior encumbrancer, redeemed the property from Pritchett, who also owned the Bachman judgment. Lawler paid $3,362.30 to redeem, which included the amounts of the Bachman and Pritchett judgments.

Pritchett had purchased the property at the execution sale held on December 11, 1951. Thus, the statutory period for redemption by a judgment debtor would have expired December 11, 1952. On December 9, 1952, Lawler transmitted to the sheriff a written statement indicating that he contended that a judgment debtor would have to pay $10,469.05 to redeem the property. This demand included the total of the amounts of the Bachman, Pritchett, Lamondo and Lawler judgments, plus the statutory interest and other statutory charges.

On February 15, 1952, Max Manig had recorded his deed from Ernest by which, on May 1, 1947, Ernest had conveyed to Max the property. On December 10, 1952, one day before the period for redemption by a judgment debtor would have expired, Max Manig purported to redeem the property by paying to the sheriff $3,660.93, and received from the sheriff a certificate of redemption. Lawler refused to accept the $3,660.93, and then brought this present action.

The parties argue several points. The sheriff, as respondent, among other things, argues that the demurrer was properly sustained on the ground that the sheriff was improperly joined as a defendant. One of the grounds of the demurrer was misjoinder of parties. In trying to support the argument that there was a misjoinder of *parties,* respondent seems to argue that there was an improper *uniting of several causes of action.* ▉ But respondent did not specially demur on the ground that several causes of action were improperly united as he had the legal right to do (Code Civ. Proc., § 430, subd. 5), but specially demurred on the ground of misjoinder of parties, which is a separate ground for demurrer (Code Civ. Proc., § 430, subd. 4).

Respondent's argument seems to be that there is a misjoinder unless each named defendant is made a party to each

pleaded cause of action. ■ Whatever the law may have been prior to 1927, it is now certain that since the amendments of that year to the sections on joinder of defendants (see Code Civ. Proc., §§ 379, 379a, 379b, and 379c), it is not necessary that the named defendants be interested or affected by all of the relief requested or in every cause of action set forth in the complaint. In fact, even before the amendments of 1927, this was held to be the law in a situation parallel to that presented in the instant case. (See *Morris* v. *Judkins*, 36 Cal.App. 413 [172 P. 163].) ■ It is too clear to require further comment that, under the sections as amended, the Manigs and the sheriff are either necessary or proper parties in the declaratory relief action, that the sheriff makes no claim to the property and so is not directly interested in the quiet title action, but that the determinations as to that cause of action will directly affect the mandamus action. Therefore, the sheriff was not improperly joined as a defendant.

■ Moreover, even if there had been a demurrer to the uniting of the three causes of action, based on the failure to name all the defendants in each cause of action (there was no such demurrer filed), such demurrer would have been without merit. There is a long line of cases holding that: ''Moreover, it has been held that the liberal amended statutes on joinder of parties referred to above enlarged the old rules of joinder of causes of action, so that causes now may be joined when they meet the tests of the sections on joinder of parties, and that all such causes do not have to affect all parties to the action.'' (*Shotwell* v. *Bloom*, 60 Cal.App.2d 303, 308 [140 P.2d 728], and cases there cited.)

■ The next contention of appellant is that Max Manig had no legal right to redeem, and that, therefore, regardless of how much Max offered to the sheriff for redemption purposes, such sum ought not to have been accepted. Accepting the allegations of the complaint as true, as we must on this appeal, it seems clear that Max Manig had no legal right to redeem. The complaint, therefore, states a cause of action against the sheriff for a declaration that the sheriff had no legal right to accept Max Manig as a redemptioner.

The complaint alleges that on December 10, 1952, Max Manig attempted to redeem, claiming that he was the assignee of the right of redemption of Ernest Manig because he was the grantee of the deed from Ernest dated May 1, 1947, and recorded February 15, 1952. The complaint also

alleges that Pritchett had purchased the property at his execution sale on December 11, 1951, at a time Ernest Manig appeared as record owner of the property, and that Lawler redeemed from Pritchett. By virtue of these facts it is alleged that the "attempted redemption [by Max Manig] is void and of no force or effect whatsoever because defendant Max E. Manig is not authorized by law to redeem said property."

Of course, neither Max Manig nor the sheriff has filed an answer in this case, and Max Manig is not a party to this appeal. But under the allegations of the complaint it would appear that Max Manig had no legal right to redeem and that, as against the sheriff, appellant is entitled to a declaration to that effect.

From the complaint it appears that Max Manig's claim to the rights of a redemptioner is based on the 1947 deed from Ernest Manig not recorded until February 15, 1952. The execution sale had been held in December, 1951, when the title to the property was in the name of Ernest. Section 701 of the Code of Civil Procedure confers upon "the judgment debtor, *or his successor in interest,*" the right to redeem. A deed executed by the judgment debtor *after* an execution sale undoubtedly would constitute an assignment of the right to redeem, and make the grantee a successor in interest of the judgment debtor. But Max Manig claims through a deed executed long before the execution sale. When that deed was executed no right of redemption existed because no such right came into existence until there had been an execution sale. Thus, one claiming under a deed executed and delivered prior to the execution sale is not the successor in interest of the right of redemption of the judgment debtor because when that deed was executed the grantor was not a judgment debtor. (See *Southern Calif. Lbr. Co.* v. *McDowell,* 105 Cal. 99 [38 P. 627].)

Respondent's argument in support of his recognition of Max Manig as the successor in interest of the judgment debtor is that it must be presumed that Ernest Manig intended to transfer both the property and the right of redemption at the time the deed was recorded in February of 1952, which was, of course, after the execution sale. This argument is obviously unsound. Ernest conveyed nothing to Max when the latter recorded his deed. Ernest had conveyed all his interest in the property to Max in 1947. Recordation by Max conveyed nothing to Max from Ernest. Recordation

is a device to establish priority, but has nothing to do with conveying title.

Of course, although the right of redemption did not arise and therefore could not be transferred until the date of the execution sale (see *Brown* v. *Timmons,* 79 Mont. 246 [256 P. 176, 57 A.L.R. 1122], so interpreting a similar code section), and although Ernest had already conveyed title to Max Manig, he still could redeem as the judgment debtor. This right of redemption could have been assigned by Ernest to Max independently of any transfer of property. (*Big Sespe Oil Co.* v. *Cochran,* 276 F. 216.) If such an assignment was in fact made by Ernest after the date of the execution sale, Max would have the right to redeem. But that can only appear by answer. Under the allegations of the complaint Max claims only through the prior deed, and that is not sufficient.

The respondent sheriff also contends that only the judgment debtor and not the redemptioner from an execution purchaser may raise this question. This point is without merit. The complaint raises the question of the legality of the sheriff's actions, and alleges that no judgment debtor or his successor in interest redeemed within the statutory period. Respondent must prove that he carried out his statutory duty of receiving payment and issuing a certificate of redemption to the correct party. The complaint states a good cause of action on this point.

It is also our opinion that the complaint states a cause of action even though it may later appear that Max was the successor in interest of the judgment debtor by way of assignment of the right to redeem, because, in our opinion, the complaint shows that the amount tendered by Max and accepted by the sheriff was not computed by the method required by law.

The sheriff permitted Max Manig to redeem by paying only the amounts of the Pritchett and Bachman judgments, plus the statutory penalties, which was substantially the amount that Lawler had paid to redeem the property from Pritchett. Lawler contends that, in addition to that sum, Max Manig should have been compelled to pay all of the liens held by Lawler, including the Lamondo judgment which Lawler had purchased. By sustaining the demurrer without leave to amend the trial court must have determined that, as a matter of law, the sheriff's method of computation was correct and

that urged by Lawler was incorrect. The difference is material. Computed according to the sheriff's method, the proper amount Max Manig had to pay to redeem was about $3,600, while computed according to Lawler's method the correct amount should have been nearly $10,500.

The legal problem can be stated as follows: When a judgment creditor (Lawler) has redeemed real property from an execution purchaser (Pritchett) may the judgment debtor, or one who stands in his shoes (Max Manig), in order to redeem, pay the prior redemptioner (Lawler) only the amount he paid to the execution purchaser plus the statutory penalties, or must he also pay to such prior redemptioner the full amount of all of the judgment liens held by the prior redemptioner?

The proper answer to this question must turn upon the proper interpretation of the relevant sections of the Code of Civil Procedure relating to who may redeem, and how.

Section 701 of the Code of Civil Procedure provides that the following persons, or their successors in interest, may redeem:

"1. The judgment debtor, or his successor in interest, in the whole or any part of the property;

"2. A creditor having a lien by judgment or mortgage on the property sold, or on some share or part thereof, subsequent to that on which the property was sold. The persons mentioned in the second subdivision of this section are, in this chapter, termed redemptioners."

Section 702 provides the time and manner by which a judgment debtor or a redemptioner must proceed to redeem from an execution purchaser. So far as relevant here, the section provides:

"The judgment debtor, or redemptioner, may redeem the property from the purchaser any time within twelve months after the sale on paying the purchaser the amount of his purchase, [plus certain penalties] . . . and if the purchaser be also a creditor, having a prior lien to that of the redemptioner, other than the judgment under which said purchase was made, the amount of such lien with interest. . . ."

Section 703 provides for the manner in which property once redeemed by a redemptioner may be redeemed by another redemptioner. The pertinent provisions of this rather lengthy section follow:

"If property be so redeemed by a redemptioner, another

redemptioner may, within sixty days after the last redemption, again redeem it from the last redemptioner on paying the sum paid on such last redemption, [plus certain penalties] . . . and, in addition, the amount of any liens held by such redemptioner prior to his own, with interest; but the judgment under which the property was sold need not be so paid as a lien. . . .

"The property may be again, and as often as a redemptioner is so disposed, redeemed from any previous redemptioner within sixty days after the last redemption, on paying the sum paid on the past previous redemption, [plus certain penalties] . . . and the amount of any liens, other than the judgment under which the property was sold, held by the last redemptioner previous to his own with interest. . . .

"Written notice of redemption must be given to the sheriff and a duplicate filed with the recorder of the county, and if any taxes or assessments are paid by the redemptioner, or if any sum for fire insurance, maintenance, upkeep, or repair of any improvement upon the property, is paid by the redemptioner, or if he has or acquires any lien other than that upon which the redemption was made, notice thereof must in like manner be given to the sheriff and filed with the recorder; and if such notice be not filed, the property may be redeemed without paying such tax, assessment, sum, or lien.

"If no redemption be made within twelve months after the sale, the purchaser, or his assignee, is entitled to a conveyance; or if so redeemed, whenever sixty days have elapsed, and no other redemption has been made, and notice thereof given and the time for redemption has expired, the last redemptioner, or his assignee, is entitled to a sheriff's deed; but, in all cases, the judgment debtor shall have the entire period of twelve months from the date of the sale to redeem the property.

"If the judgment debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner. If the debtor redeem, the effect of the sale is terminated, and he is restored to his estate. . . ."

Before attempting to interpret these sections the precise legal relationships of the parties should be kept in mind. The facts pleaded, which are of course admitted to be true by the demurrer, are that Max Manig claims as the purported successor in interest of the judgment debtor, Ernest Manig. Appellant Lawler as a junior encumbrancer redeemed from Pritchett who had purchased at his own execution sale.

Under the above sections, how much money is Lawler entitled to from Max Manig, assuming him to be a successor in interest of Ernest Manig?

The solution to this problem seems reasonably clear. ■ Section 702, by its terms, is limited to redemptions from the execution sale purchaser, a type of redemption not here involved. Under this section the execution purchaser does not get his own judgment satisfied by the redemptioner in the event the execution sale has been for an amount less than the judgment—he gets only the amount of his purchase plus the amount of any prior liens he may hold. Otherwise, a judgment creditor who purchased at an execution sale, would continue as a creditor for the unsatisfied portion of his judgment. (See discussion 11 Cal.Jur. p. 103, § 52.)

■ Section 703 deals specifically with the measure of payment due a prior redemptioner when the property is redeemed by another redemptioner. That measure specifically includes the prior liens the first redemptioner holds. The language used is that such subsequent redemptioner must pay the amount of the prior redemption, plus penalties and, in addition, "the amount of any liens . . . held by the last redemptioner previous to his own." This measure of payment is not limited to creditors redeeming from a prior redemptioner, but is expressly made applicable to a judgment creditor redeeming from a redemptioner. The language is, "if the judgment debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner." Thus, the reasonable interpretation of this language is that by section 703 judgment creditors are placed in the same position as any other subsequent redemptioner after a prior redemption. (See *Youd* v. *German Sav. & Loan Soc.*, 3 Cal.App. 706 [86 P. 991].)

The cases relied upon by respondent do not suggest a contrary interpretation. The principal case relied upon is *Simpson* v. *Castle*, 52 Cal. 644. There a mortgagee purchased the property at a foreclosure sale at a price below the amount of the judgment held by the mortgagee. A successor in interest of the mortgagor redeemed by paying the mortgagee what he had paid at the foreclosure sale. The mortgagee then attempted to levy on the property for the unsatisfied portion of his judgment. An action was brought to enjoin the execution sale. The court held, and properly so, that the successor in interest to the judgment debtor by redeeming from the purchaser at the execution sale took title free from the lien

of the deficiency judgment. The case stands for the proposition that a purchaser at an execution sale who buys for less than the amount of his lien cannot have the balance of his judgment become a lien when the property is redeemed by a successor in interest of the judgment debtor. The case has nothing to do with what a successor in interest of the judgment debtor must pay to redeem from a redemptioner who redeemed from the execution sale purchaser. The latter situation is covered by the clear language of section 703.

The other cases cited by respondent are of the same type. They are not in point.

' Thus, in the event that Max Manig should qualify as a successor in interest of the judgment debtor, it would then follow that the sheriff accepted a redemption for an amount less than the amount required by law. The complaint thus states a cause of action in this respect.

Some mention should be made about the obvious interrelation of parties, subject matter, and issues in this case and the one involved on the prior appeal. In the other action Max Manig sought to quiet his title against Lawler, and Lawler sought to quiet his title against the claims of Max. The trial court quieted Lawler's title, but that determination was reversed. On the retrial of that action Max Manig may be declared to be the owner of the property. In that event, all of Lawler's claims made in that action, as well as all his claims made in the present one, would be without merit. This follows because the validity of all of Lawler's claims in the instant case against the sheriff and against the Manigs are entirely dependent on his claim that he secured good title by redeeming from the execution purchaser. If the execution purchaser did not get good title Lawler had no right to redeem, nor would anyone else have the right to redeem from him. If Lawler has no title to the property, and Max Manig has good title, Lawler has no right to complain that Manig improperly redeemed the property when the title of Manig is not dependent on the redemption.

On the other hand, in the other action, on the retrial, Lawler's title may again be quieted against the claims of Max. If that judgment becomes final, then Lawler would be entitled in the present action to have the validity of the attempted redemption by Max Manig determined.

Under such circumstances, it is apparent that either the two cases are so interdependent that they should be consolidated for trial, or the prior action between Max Manig

and Lawler should be tried before the instant case is tried. The trial court possesses complete discretion to control this phase of the litigation and will undoubtedly do so.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.