306 P.2d 897]

[L. A. No. 24012. In Bank. Feb. 15, 1957.]

WINSTON N. SALSBERY et al., Appellants, v. TEX RITTER et al., Respondents.

[L. A. No. 24013. In Bank. Feb. 15, 1957.]

WINSTON W. SALSBERY et al., Appellants, v. TEX RITTER et al., Defendants; EUGENE W. BISCAILUZ, as Sheriff, etc., et al., Respondents.

Edward H. Blixt for Appellants.

Stanley Sevilla, in pro. per., Kenneth D. Holland, Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Respondents.

TRAYNOR, J.—On June 20, 1955, plaintiffs filed an amended complaint consisting of three counts in which they sought (1) a declaration of rights, (2) a determination of conflicting claims to realty, and (3) the nullification of a judgment and an execution sale of realty pursuant thereto.

On June 29, defendants Biscailuz, sheriff of Los Angeles County; the Municipal Court of the Los Angeles Judicial District; and Barbour, clerk of the municipal court, filed a demurrer attacking each count of the amended complaint as insufficient to state a cause of action. The court sustained the demurrer without leave to amend and entered judgment of dismissal for those defendants.

On September 19, after plaintiffs had filed a fourth amended complaint, defendants Ritter and Holland filed a demurrer, and a separate demurrer was filed by defendants Custom Craft, Cutright, Nishemine, and Sevilla. Each of these demurrers was upon the ground that the fourth amended complaint failed to state a cause of action. Both demurrers were sustained without leave to amend, and judgment of dismissal was also entered for those defendants. Plaintiffs appeal.

The ultimate issue on appeal is whether or not the facts alleged by plaintiffs show a right to relief. The fourth amended complaint is identical to the amended complaint insofar as defendants Barbour, Biscailuz, and the municipal court are concerned, and since the count for declaratory

relief contains substantially all of the allegations found in the other counts, only that count will be discussed.

In substance these are the facts alleged: Defendant Custom Craft obtained a judgment against plaintiffs, Winston and Helen Salsbery, for $150.09 and costs. In the action an original summons was issued and returned. An alias summons was issued, and without the return of the first alias summons or an affidavit that it had been lost, a second alias summons was issued by the Clerk. While the first alias summons was still outstanding, service of the second alias summons was made upon Helen, and judgment was entered by default.[1]

Pursuant to the Custom Craft judgment a writ of execution issued and was levied upon the interests of plaintiffs in certain described realty. On May 4, 1954, the sheriff sold plaintiffs' interests to defendants Cutright, Nishemine, and Sevilla for $51.70 and issued and recorded a certificate of sale.

On June 14, 1954, defendants Ritter and Holland obtained a judgment against plaintiffs for $1,500,[2] which was recorded June 25, 1954.

On April 21, 1955, plaintiffs homesteaded their interest in the realty.

On April 28, 1955, defendants Ritter and Holland purported to redeem the property by paying to the sheriff $51.70 plus interest and costs. Ritter and Holland did not record a notice of redemption as required by section 703 of the Code of Civil Procedure.

On April 29, 1955, plaintiffs served upon the sheriff a notice of redemption, filed a copy of the notice with the county recorder, and deposited with the sheriff $61.80, which is still on deposit with him. The sheriff, Ritter, and Holland have demanded that plaintiffs deposit with the sheriff an additional sum equal to the amount of the judgment in favor of Ritter and Holland, plus interest and costs. The sheriff refuses to issue a certificate of redemption to either plaintiffs or Ritter and Holland on the ground that he does not know who is legally entitled to the certificate.

On June 1, 1955, plaintiffs filed ". . . two petitions in bankruptcy . . . discharging all of the aforementioned judgments and indebtedness."

---

[1] The fact that the judgment was taken by default is not alleged in the complaint but is disclosed by plaintiffs' petition. This deficiency could have been cured by amendment.

[2] Holland is Ritter's attorney, and he vigorously disclaims any personal interest in this judgment. This point, however, is not properly raised by a general demurrer to the complaint.

■ In an action for declaratory relief, when the complaint shows the existence of an actual controversy among the parties, a general demurrer to the complaint should be overruled. The plaintiff is entitled to a declaration of his rights whether the declaration is favorable to him or not. (*Maguire* v. *Hibernia Sav. & Loan Soc.*, 23 Cal.2d 719, 728 et seq. [146 P.2d 673, 151 A.L.R. 1062].) Two exceptions to this general rule have been recognized (*Bennett* v. *Hibernia Bank*, 47 Cal.2d 540, 549-550 [305 P.2d 20]), but neither exception is involved in this case.

It is readily apparent that the complaint shows the existence of an actual controversy between plaintiffs and defendants Custom Craft, Cutright, Nishemine, and Sevilla with respect to the validity of the Custom Craft judgment and the subsequent execution sale. Likewise, a controversy is shown to exist between plaintiffs and defendants Ritter and Holland with respect to rights arising from the two purported redemptions. ■ Although the remedy against the sheriff might appropriately be a petition for mandate (see *Lawler* v. *Gleason*, 130 Cal.App.2d 390 [279 P.2d 70]), an action for declaratory relief is not inappropriate, since the controversy with respect to the redemptions revolves around the meaning of section 703 of the Code of Civil Procedure (see discussion *infra*). (*California Physicians' Service* v. *Garrison*, 28 Cal.2d 790 [172 P.2d 4, 167 A.L.R. 306].) ■ Furthermore, as against a general demurrer the complaint may be construed as an application for mandate. (*Boren* v. *State Personnel Board*, 37 Cal.2d 634, 638 [234 P.2d 981].) It was error therefore to sustain the demurrers, and the judgments must be reversed. (*Maguire* v. *Hibernia Sav. & Loan Soc., supra.*)

Our decision that controversies are shown to exist, however, does not resolve them, and we must therefore pass upon the questions of law that must be decided to reach a final determination of the case. (Code Civ. Proc., § 53.)

*Validity of the Custom Craft Judgment*

Plaintiffs contend that the clerk was without authority to issue a second alias summons without the return of the first alias summons or an affidavit that the first had been lost, that therefore the service upon Helen of the second alias summons did not subject her to the jurisdiction of the court, and that consequently the judgment against her and the subsequent execution sale are void.

This contention was considered by the Appellate Department of the Superior Court of Los Angeles County in reversing a judgment of nonsuit in an unlawful detainer action brought by Ritter against the Salsberys. (*Ritter* v. *Salsbery,* 142 Cal.App.2d Supp. 847, 853-854 [298 P.2d 166].) The court held that there was no error in serving the second alias summons, saying, ". . . there is nothing in section 408, Code of Civil Procedure, which prohibits the issuance of an alias summons while a previously issued alias is outstanding. . . . It . . . provides, without further qualification or condition, that 'As many alias summonses as are necessary may be issued within such time'. . . ." In our opinion section 408 alone does not provide a solution to the problem. Although it authorizes the issuance of several alias summonses, the question remains whether they may be issued concurrently or whether the preceding summons must be returned or lost before a new summons may issue.

Section 406 of the Code of Civil Procedure provides for the issuance of only one original summons for each county in which one of the defendants resides. Section 408 provides that an alias may issue only when the original has been returned or lost. Reading these sections together we conclude that there is to be outstanding in a single county only one summons at a time. This conclusion finds further support in the fact that at common law it was thought that the return of the preceding writ was a prerequisite to the issuance of an alias or pluries writ. (See Alderson on Judicial Writs and Process (1895), pp. 154-157.)

The question then arises whether the irregularity in process of which plaintiffs complain is a sufficient reason to annul the subsequent judgment when the attack comes in an independent suit in equity more than a year after the entry of judgment and plaintiffs do not allege that they had a meritorious defense to the original action. The answer is that it is not. Even at common law failure to return the preceding writ did not render the alias or pluries writ void. (Alderson, *supra,* at 155-156.) In *Williams' Administrator* v. *Welton's Administrator,* 28 Ohio St. 451, under statutes very similar to our own, it was held that service of a second alias summons while the first was still outstanding gave the court jurisdiction over the person. The court said at page 471: "The object of a summons is to give the party notice, and as each of these writs was in due form, one was as effectual, as a notice, as the other to the party served." We

agree with this statement and hold, therefore, that the Custom Craft judgment is not void.

### The Purported Redemptions

Plaintiffs advance several arguments in support of their contention that Ritter and Holland never effectively redeemed. ▮ They urge that since the Ritter-Holland judgment was not obtained until after the sale of the property on execution, Ritter and Holland acquired no lien and were not eligible to redeem the property. (See Code Civ. Proc., § 701.) This contention is without merit. (*Clark* v. *Cuin,* 46 Cal.2d 386 [295 P.2d 401]; *McMillan* v. *Richards,* 9 Cal. 365, 412-413 [70 Am.Dec. 655].) ▮ Plaintiffs also contend that since they homesteaded the property prior to the Ritter-Holland redemption, the redemption was invalid as a forced sale of exempt property. (See Civ. Code, § 1240.) This argument is likewise without merit, for even were we to hold that a redemption is equivalent to a forced sale, section 1241 of the Civil Code provides that the homestead is subject to sale in satisfaction of a judgment that constituted a lien upon the premises before the declaration of homestead was filed for record. Such is the fact in this case. The homestead was not declared until April 21, 1955. ▮ The Ritter-Holland judgment was recorded June 25, 1954, and under the rule of *Clark* v. *Cuin, supra,* at that time the Ritter-Holland judgment became a lien upon the interest plaintiffs retained in the realty.

Plaintiffs urge that even if Ritter and Holland validly redeemed, the $61.80 deposited by plaintiffs with the sheriff was sufficient to effect a redemption by the plaintiffs. Section 703 of the Code of Civil Procedure governs redemption from a prior redemptioner. It provides in part: "If the judgment debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner. . . ."[3] What payments must a redemptioner make? The section provides:

"If property be so redeemed by a redemptioner, another redemptioner may, within sixty days after the last redemption, again redeem it from the last redemptioner on paying the sum paid on such last redemption, . . . and, in addition, the amount of any liens held by such redemptioner prior to

---

[3]Section 701, which lists the classes of persons eligible to redeem, makes a distinction between the judgment debtor or his successor and "redemptioners." This distinction is maintained with variable consistency throughout sections 702 and 703.

his own with interest; but the judgment under which the property was sold need not be so paid as a lien.''

As plaintiffs read the statute, "liens . . . prior to his own" means liens held by the prior redemptioner that are prior to the lien created by the judgment that the prior redemptioner personally recovered against the debtor, i.e., "his own." They argue that since only liens prior to "his own" must be paid, "his own" judgment lien need not be paid. The contrary argument is, of course, that "liens . . . prior to his own" means liens prior to that upon which the current redemptioner seeks to redeem.

*Lawler* v. *Gleason,* 130 Cal.App.2d 390, 397-400 [279 P.2d 70], is cited as authority contrary to the construction advanced by plaintiffs. In that case, however, the prior redemptioner held in addition to "his own" judgment lien a lien "prior to his own," and the ambiguity pointed out here was not discussed.

◼ It is clear that the statutory words "such redemptioner" refer to the words "last redemptioner" (see original phraseology, Stats. 1851, ch. 5, p. 88, § 232), and it is equally clear that the words "last redemptioner" refer not to the current redemptioner but to the prior redemptioner. As thus interpreted the pertinent part of the section would read, ". . . and, in addition, the amount of any lien held by the prior redemptioner prior to his own. . . ." The juxtaposition of the words "such redemptioner," meaning prior redemptioner, and the phrase "prior to his own" without intervening punctuation would seem to indicate that the phrase "liens . . . prior to his own" means liens held by the prior redemptioner that are prior to the lien created by the judgment that the prior redemptioner personally recovered against the debtor. The purpose for which the statute was apparently enacted, however, and the language found in section 702 of the same code, relating to redemption from the execution sale purchaser, indicate that "liens . . . prior to his own" means liens prior to the lien upon which the current redemptioner seeks to redeem.

Chancellor Kent discussed the development of the right to redeem from sale upon execution in his monumental "Commentaries." (14th ed., vol. 4, pp. 493-515.) He recounts that at common law, real property was not subject to execution, but that for the benefit of English creditors, the Statute of 5 George II, ch. 7 was enacted in 1732, making real estate in the English colonies subject to execution. For a long

time it was the practice to sell the real estate absolutely, without possibility of redemption, but ". . . sales of land on execution had been attended with so much oppressive speculation upon the necessities of the debtor, . . ." (p. 431) that several states enacted statutes providing for redemption.

It thus appears that one of the primary purposes of statutory redemption is to force the purchaser at the execution sale to bid the property in at a price approximating its fair value. (See 23 Mich.L.Rev. 825, 839-841.) This purpose is apparent in our statute from the provisions in sections 702 and 703 that any deficiency between the purchase price at the sale and the amount of the lien upon which the property was sold need not be paid upon a subsequent redemption. To effectuate its purpose the statute must be construed to encourage redemption and make the property answer for existing liens up to its fair value. Redemption would not be encouraged by a construction that would permit a subsequent lienor to re-redeem without paying to the prior redemptioner the amount of his judgment. Under such a construction the current redemptioner would take subject to the lien of the prior redemptioner. The prior redemptioner would then be entitled to levy execution upon the property, and the process would begin anew. Such a result would be absurd.

Section 702 of the Code of Civil Procedure provides that upon redemption from the execution purchaser, the redemptioner must pay the purchase price and certain other items ". . . and if the purchaser be also a creditor, having a *prior lien to that of the redemptioner,* other than the judgment under which said purchase was made, the amount of such lien with interest. . . ." (Italics added.) Here the meaning is clear. The liens that must be paid are those prior to that upon which the current redemptioner seeks to redeem, and the rule must be the same upon redemption from a prior redemptioner.

Even so, plaintiffs contend that their tender was sufficient. They point out that while their $61.80 remained in the hands of the sheriff, the Ritter-Holland judgment was discharged in bankruptcy. This fact, they argue, made it unnecessary for them to tender the amount of that judgment. It should be noted in this respect that plaintiffs' pleading of the asserted discharge is somewhat faulty. The allegation is that the petitions in bankruptcy were "filed," "discharging" the judgment. Obviously, the mere filing of the petitions did not serve to discharge the judgment, but the deficiency

could have been corrected by amendment. We have concluded, however, that discharge of the judgment would not reduce the amount required for redemption.

■ Since section 703 requires the payment of liens, not judgments, we are concerned with the effect upon the Ritter-Holland lien of the discharge in bankruptcy of the Ritter-Holland judgment. Section 675b of the Code of Civil Procedure provides that when a judgment was a lien on real property owned by the bankrupt prior to the time he was adjudged a bankrupt, the lien remains unaffected though the judgment be discharged in bankruptcy. The Ritter-Holland judgment was recorded June 25, 1954. Plaintiffs did not file their petitions in bankruptcy until June 1, 1955. The Ritter-Holland lien was therefore unaffected by the bankruptcy proceedings.

Plaintiffs' principal argument against the efficacy of the Ritter-Holland redemption and in support of the sufficiency of their own tender is that Ritter and Holland did not file a notice of redemption with the county recorder as required by section 703 of the Code of Civil Procedure. The pertinent part of section 703 reads:

"Written notice of redemption must be given to the sheriff and a duplicate filed with the recorder of the county, and if any taxes or assessments are paid by the redemptioner, or if any sum for fire insurance, maintenance, upkeep, or repair . . . is paid by the redemptioner, or if he has or acquires any lien other than that upon which the redemption was made, notice thereof must in like manner be given to the sheriff and filed with the recorder; and if such notice be not filed, the property may be redeemed without paying such tax, assessment, sum, or lien."

■ In *Ritter* v. *Salsbery, supra,* 142 Cal.App.2d Supp. at 850-852, it was held that a notice need be filed for recordation only if the redemptioner, subsequent to his redemption, makes expenditures for the items enumerated in the section or acquires another lien. That interpretation of the section is erroneous. Section 703 refers to two distinct notices, a notice of redemption and a notice of subsequent expenditures or after-acquired liens. Only the former notice is involved in this case.

■ The question then arises as to the effect of a redemptioner's failure to file a notice of redemption with the county recorder. Section 703 provides: ". . . if such notice be not filed, the property may be redeemed without paying such

tax, assessment, sum, or lien.'' Although a contrary argument might be made, the reference to ''tax, assessment, sum or lien'' indicates that the specified penalty pertains only to a failure to record a notice of subsequent expenditures or after-acquired liens, not to a failure to record a notice of redemption. Resort must therefore be had to the reasons underlying the requirement that a notice of redemption be recorded.

One reason may be deduced from the fact that redemption may be effected by paying the requisite amount either to the officer who sold the property or directly to the purchaser or prior redemptioner. (Code Civ. Proc., § 704.) Recordation of a notice of redemption diminishes the possibility that a subsequent redemptioner will make payment to some person who because of an undisclosed intervening redemption no longer has any interest in the property.

Another reason is that persons eligible to re-redeem are entitled to know the amount of money required to effect a redemption so that they may act intelligently with respect to the property. (See *Corporation of America* v. *Eustace,* 217 Cal. 102, 107 [17 P.2d 723] ; see also Code Civ. Proc., § 705.) The Legislature has provided that notice of subsequent expenditures and after-acquired liens must be recorded and, failing that, that their repayment may not be demanded as a prerequisite to redemption. (Code Civ. Proc., § 703.) To know the amount required for redemption, however, one must know not only the amount of subsequent expenditures but also the amount of the lien upon which the prior redemption was made, since the amount of that lien must be paid to effect a redemption. The recordation of a notice of redemption gives notice of the amount of that lien.

The effect of a failure to record would seem to depend upon the events following the omission. For instance, if no person sought to re-redeem within the statutory period, the failure to record would have no effect at all. If as a consequence of the failure to record, a subsequent redemptioner should, without notice, pay the wrong person, the good faith redemption would be effective as against the faulty one.

When a person eligible to redeem, without notice of any intervening redemption, tenders to the sheriff or the last redemptioner of record a sum of money, which but for the lien of the undisclosed redemptioner would be sufficient to effect a redemption, that tender is sufficient unless the person seeking to redeem is notified of the pertinent facts by the sheriff or the last redemptioner of record, and the inter-

vening redemptioner who has failed to record is precluded from demanding as a prerequisite to redemption from him the amount of his lien. This result gives effect to the purpose for which recording is required and parallels the result dictated by section 703 when the omission is the failure to record a notice of subsequent expenditures or after-acquired liens. In view of the legislative requirement that persons eligible to redeem be informed of the amount of money necessary to redeem, it is immaterial that the innocent subsequent redemptioner can reclaim his money.

The pleadings in the instant case do not disclose whether or not plaintiffs had actual notice of the Ritter-Holland redemption when they tendered their $61.80 to the sheriff. Of course they must show that they had no such notice before they will be entitled to a favorable declaration, and technically they should have pleaded that fact. It appears from the foregoing discussion, however, that even without that allegation plaintiffs stated a case for a declaration of the meaning of the statute.

Since it does not appear from plaintiffs' pleadings that any controversy exists between plaintiffs and the Municipal Court of the Los Angeles Judicial District or George J. Barbour, its clerk, or that plaintiffs are entitled to any relief against those defendants, the judgment of dismissal is affirmed as to them. As regards the other defendants, both judgments of dismissal are reversed for further proceedings consistent with this opinion. Plaintiffs shall bear their own costs on appeal and the costs on appeal of the Municipal Court of the Los Angeles Judicial District, of George J. Barbour, its clerk, and of defendants Custom Craft Sheet Metal Products, Jango Nishemine, George A. Cutright, and Stanley Sevilla. Each of the other parties shall bear his own costs on appeal.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., Spence, J., and McComb, J., concurred.