**Henry T. HAYE, Jane S. Haye, et al., Plaintiffs,**

v.

**UNITED STATES of America.**

**No. CV 78–2423–RJK.**

United States District Court,
C. D. California.

Dec. 13, 1978.

Mazirow, Schneider, Forer & Lawrence, Inc., Francis J. Cunningham, III, Los Angeles, Cal., for plaintiffs.

Andrea Sheridan Ordin, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., William J. James, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

### MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

Simply put, the genesis of this litigation lies in the complete and utter inability of several parties to spell correctly the name "Castillo." As will develop, one Manuel de J. Castillo took title to a parcel of real property in 1971. The deed, duly recorded, referred to him as "Cattillo." Years later, Dr. Castillo fell into tax trouble with the federal government. The IRS duly filed its Notice of Tax Lien (Form 688) with the Los Angeles County Recorder's office. The Notice, however, referred to Dr. Castillo as "Manual de J. Castello," misspelling both his first and last names. Castillo subsequently transferred the property to a "friend," who thereupon—without Castillo's knowledge—transferred the parcel to plain-

tiffs. All the transactions were duly recorded. The government, on the basis of its tax lien, now wishes to sell the parcel. The plaintiffs, understandably attached to their homestead, resist this effort.

The plaintiffs filed this complaint to quiet title to real property, to cancel a federal tax lien, and seeking injunctive relief on June 22, 1978. The United States had seized the property on June 8, 1978, pursuant to its levy, and was planning to conduct a sale of the same property on June 27, 1978. On June 26, 1978, the Court granted plaintiffs' request for a preliminary injunction by minute order. A formal order to that effect was lodged and signed on June 28, 1978. The preliminary injunction required the defendant, the United States of America, to refrain from selling the plaintiffs' property pursuant to a tax lien during the pendency of this action. Plaintiffs filed their request for judicial notice and motion for summary judgment on October 27, 1978. The government's opposition was filed November 8, 1978, contesting only plaintiffs' motion for summary judgment. No opposition was filed with respect to plaintiffs' request for judicial notice.

Briefly, the plaintiffs contend that the United States District Court has jurisdiction to quiet title to the real property and to grant the requested permanent injunction. They further argue that (a) a title insurance company is not an agent of the insured (i. e. the plaintiffs) for purposes of imputing knowledge of the existence of federal tax liens, and (b) the lien recorded pursuant to 26 U.S.C. § 6321 was and is invalid in that it failed to give actual or constructive notice of its existence to a person of ordinary intelligence and diligence. They conclude that the Court should enter a judgment quieting title to the real property in plaintiffs' name and permanently enjoining the government from selling or attempting to sell all or any portion of that real property pursuant to its invalid tax lien.

Defendant agrees that the Court has jurisdiction over wrongful levy actions (*see* 28 U.S.C. § 1346(e)) and over quiet title actions which do not challenge the merits of the underlying tax assessment.[1] It argues, however, that the Court has no jurisdiction to *cancel* a federal tax lien, and further argues that a complete cancellation would be inappropriate, as "the federal tax lien attached to all property and rights to property of the delinquent taxpayer [*in this case, someone other than the plaintiffs*] and affects both individuals and property not before this Court."[2] The government further argues that the plaintiffs were not "purchasers" within the ambit of 26 U.S.C. § 6323(a) as that term is defined in 26 U.S.C. § 6323(h)(6), because their title was not valid under local law as against subsequent purchasers without actual notice. The government alleges plaintiffs' title was unmarketable because of variations in the spelling of the name of a prior grantor within the plaintiffs' chain of title, and this, it is claimed, is fatal under § 6323(h)(6). Finally, the government contends its tax lien, as filed, was sufficient to give notice to the plaintiffs of the federal tax lien on their property.

## A. *Jurisdiction*

The Court has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1346(e), which states that

> [t]he district courts shall have original jurisdiction of any civil action against the United States provided in Section 7426 of the Internal Revenue Code of 1954.

26 U.S.C. § 7426(a)(1) provides, in pertinent part, that

> [i]f a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in . . . such property . . . may bring a civil action against the Unit-

---

1. The government initially denied that the Court had such jurisdiction.

2. The Court does not, however, understand the plaintiffs to ask that the *entire* lien be cancelled. Rather, they ask that the lien be cancelled as to the subject property *only*.

ed States in a district court of the United States.

Subsection (b)(1) limits the form of relief a district court may grant in such a situation:

> The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:
>
> > (1) *Injunction.*—If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

Thus, the Court has jurisdiction. And if the Court finds the rights of Haye superior to those of the United States in the property, it may issue an injunction prohibiting the United States from enforcing its levy if the Court further finds that such enforcement would, in absence of the decree, cause irreparable harm.

### B. *Propriety of Summary Judgment*

Fed.R.Civ.P. 56(a) states that "[a] party seeking to recover upon a claim . . . may, at any time after the expiration of 20 days from the commencement of the action . . . move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof." Summary judgment is appropriate under 26 U.S.C. § 6323 if there are no "material, but undetermined question[s] of fact" outstanding. *See Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.,* 512 F.2d 605 (2d Cir. 1975) (summary judgment improper where taxpayer's domicile is unclear).

A review of the complaint, the government's answer thereto (as supplemented by certain admissions contained in its opposition to summary judgment), reveals the following uncontested facts:

> The plaintiffs are residents of the County of Los Angeles, State of California. The plaintiff, Glendale Federal Savings and Loan Association, was and is now a corporation duly organized and existing under the laws of the United States, and doing business in the County of Los Angeles. That on or about May 17, 1977, plaintiffs Haye bought the property in question from Isidore Schuman. Schuman, in turn, had received the property from the delinquent taxpayer, Manuel de J. Castillo on May 5, 1975, *after* the government had filed a Notice of Federal Tax Lien on February 26, 1974. The plaintiff Glendale Federal is a beneficiary of a Deed of Trust executed by plaintiffs Haye. The tax lien named as the taxpayer Manual de J. Castello. Defendant seized the real property in question on June 8, 1978, and the plaintiffs were unaware of the existence of the government's lien until that time.
>
> The parties agree that the taxpayer's correct name is Manuel de J. Castillo. The parties agree that the Notice of Tax Lien was filed under the incorrect name of Manual de J. Castello. The parties further agree that Notice of Federal Tax Liens are recorded in Los Angeles County *only* by the name of the delinquent taxpayer.

Although the parties dispute certain "ultimate" factual issues, the Court concludes that the only issues remaining for determination are legal in nature, requiring the Court to interpret existing law and apply it to the uncontested factual recitals.

### C. *Summary Judgment Should be Given to Plaintiffs*

26 U.S.C. § 6321 provides that if a person fails to pay any tax, a lien shall arise in favor of the United States with respect to all property owned by the taxpayer. Manuel de J. Castillo was such a taxpayer, and the government duly assessed a deficiency on February 25, 1974. On February 26, 1974, a Notice of Federal Tax Lien (form 688) was filed with the Los Angeles County Recorder's Office, naming the delinquent taxpayer as "Manual de J. Castello." 26 U.S.C. § 6323(a) provides that the "lien imposed by section 6321 shall not be valid as against any purchaser . . . until notice thereof which meets the requirements of subsection (f) has been filed . . . .". 26 U.S.C. § 6323(f)(3) provides that the

"form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary or his delegate. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien." There are two threshold issues. First, are the plaintiffs "purchasers" within the ambit of section 6323(a)? If so, did the IRS satisfy the requirements of section 6323(f)(3)?

### 1. Plaintiffs are Purchasers

■ The government asserts that the plaintiffs are not "purchasers" as that term is used in 26 U.S.C. § 6323(a). The government maintains that because the title the plaintiffs acquired was clouded (i. e. Castillo's name was spelled "Cattillo" in the 1971 conveyance to him) the plaintiffs' title is "unmarketable." The inference made by the government is that an "unmarketable" title is not "valid under local law as against subsequent purchasers without actual notice." *Id.* Thus, the government argues, if the plaintiffs did not acquire a title valid as against subsequent purchasers without actual notice, they cannot be purchasers under § 6323(h)(6). This is a novel argument. It is also an incorrect argument, as will be presently demonstrated.

■ First, that a title is "unmarketable" has nothing whatsoever to do with its validity as against subsequent purchasers without actual notice. "Recordation is a device to establish priority, but has nothing to do with conveying title." *Lawler v. Gleason,* 130 Cal.App.2d 390, 395–6, 279 P.2d 70, 74 (1955). Thus, a marketable title is defined as one that is free from reasonable doubt in law or in fact; one that may be readily sold to a reasonably prudent purchaser, or mortgaged to a person of reasonable prudence as security for the loan of money. *See Peckham v. Stewart,* 97 Cal. 147, 31 P. 928 (1893); 92 C.J.S. *Vendor & Purchaser* § 191a. Marketable title is, in that respect, an extremely artificial concept. For instance, property encumbered with a restrictive covenant is generally thought to be "unmarketable," regardless of whether or not the restrictions are seen as being bene-

ficial. 92 C.J.S. *Vendor & Purchaser* § 191a. However, a title encumbered with a restrictive covenant is nonetheless recordable and protected against subsequent purchasers without actual notice. Therefore, the mere assertion of "unmarketability" does not exclude plaintiffs from the class of purchasers within the purview of 26 U.S.C. § 6323(a), as that term is defined in § 6323(h)(6).

Second, even if it *is* the law that an unmarketable title, duly recorded, provides no protection against subsequent purchasers for value without actual notice, it is not entirely obvious that the plaintiffs' title is unmarketable. Although

> a title may be rendered unmarketable by a materially wrong [sic] designation of the grantor or grantee in a deed in the chain of title, unless the variance is immaterial and the objection frivolous or it is cured by competent evidence . . . a discrepancy between the name of a grantee in a deed and that of a grantor in a subsequent deed, both of which deeds have been of record for a number of years, with no assertion of adverse title based on the discrepancy, is insufficient to avoid a contract which provides for an abstract showing good title.

92 C.J.S. *Vendor & Purchaser* § 195c. *See also Levitt v. 1317 Wilkins Corp.,* 58 N.Y. S.2d 507 (Sup.Ct.1945); *Trinity Cathedral v. Etz,* 137 N.J.Eq. 261, 44 A.2d 394 (1945). Here the government neither makes an assertion of adverse title based on the 1971 misspelling, nor does it appear that Castillo's title wasn't "recorded for a number of years." On this evidence, most courts would not declare the plaintiffs' title unmarketable.

■ Finally, a generous reading of the government's allegations would find it asserting that the misspelling of Castillo's name in 1971 somehow rendered the Haye deed of no force and effect against subsequent purchasers for value without notice. Presumably, a subsequent purchaser could take title from "Cattillo" although the Haye family has taken title from "Castillo." The California law is directly to the contrary.

Thus, in *Fallon v. Keough,* 38 Cal. 44, 99 Am.Dec. 347 (1869), the Alcalde of San Jose granted a lot to one "Darby O'Fallon," the nickname of Jeremiah Fallon. Fallon subsequently conveyed the lot twice, once under the nickname (i. e. Darby O'Fallon) and once under his Christian name (i. e. Jeremiah Fallon). The issue before the Court, of course, concerned which purchaser had the valid title. The Court noted that the first purchaser (who took under Fallon's Christian name) had duly recorded the conveyance, and was entitled to a protected title, notwithstanding the fact that the conveyance was made in a name other than that under which the vendor originally acquired title. The Court there recommended that the Recording Statute include a provision whereby a conveyance in a name other than the name of the grantee should be noted in the recording for the protection of subsequent purchasers. The California legislature indeed added such a provision. *See* California Civil Code § 1096; *Puccetti v. Girola,* 20 Cal.2d 574, 576–9, 128 P.2d 13 (1942) (per Traynor, J.). However, as Judge Traynor indicated in his opinion, the purpose of the statute was to avoid the spectre of an intentional "wild title" stalking the recorded property by virtue of a person's name change or use of a false name to take title. Here, there is no allegation that the misspelling was anything other than a mistake. As a mistake, the provisions of § 1096 are inapplicable, and plaintiffs' title remains valid as against subsequent purchasers without actual notice under the doctrine set forth in *Fallon, supra.*

▉ Finally, the Glendale Federal Savings & Loan Association is also a "purchaser," as that term is defined in 26 U.S.C. § 6323(h)(6), by reason of the fact that it is a holder of a security interest in the property.

## 2. *The Government Failed the Test of Section 6323(f)(3)*

▉ Section 6323(f)(3) authorizes the Secretary or his delegate to prescribe the correct form of notice. The proper form so prescribed is denominated "Form 688":

The notice referred to . . . shall be filed on form 688, "Notice of Federal Tax Lien under Internal Revenue Laws". Such notice is valid notwithstanding any other provision regarding the form or content of a notice of lien. For example, omission from the notice of lien of a description of the property subject to the lien does not affect the validity thereof even though State law may require that the notice contain a description of the property subject to the lien.

26 C.F.R. § 301.6323(f)–1(c). The form sets forth (a) the name of the taxpayer, and (b) his residence. Because the residence of Manuel de J. Castillo was not the subject property, the plaintiffs could not have obtained notice of the lien by screening the records in that fashion. Further, the uncontroverted facts show that the government incorrectly spelled the name of the taxpayer on Form 688. The misspelling of Castillo's first and last names caused the Notice to be indexed approximately nine pages and one thousand names prior to its proper location in the Los Angeles County Recorder's General Index. A review of the case law indicates that a misspelling does not *automatically* render the tax lien invalid under 6323(a). However, where the indexing system is only by the taxpayer's name (*compare: Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir. 1956) (Florida System gave purchasers a number of methods for checking for Federal Tax liens)) the issue is whether the lien would be disclosed by a reasonable and diligent search of the General Index. *United States v. Sirico,* 247 F.Supp. 421, 422 (S.D.N.Y. 1965). However, it should be kept in mind that

[t]he Commissioner, having drafted the form which required the naming of the taxpayer against whom the lien is claimed, should not ask the Court to place in the notice the names of persons whom his draftsman attempted to include by the insertion of the abbreviation . . . "et alii." . . . To require the Commissioner to abide by the rules which he

**1174**

obviously felt were required . . . is nothing more than good common sense. *F. P. Baugh, Inc. v. Little Lake Lumber Co.*, 297 F.2d 692 (9th Cir. 1961), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962). Here, the IRS drafted form 688. Because the name of the taxpayer is crucial under the California Indexing System, the IRS should be required to hold fairly strict standards as to the correctness of the name used on the form. Here, reasonable and diligent search probably does not encompass a search of over 1,000 names and nine pages of the General Index, especially where the name is a common Hispanic name like Castillo. Even if such is reasonable, the plaintiffs would have had the further problem that the taxpayer's first name was incorrectly spelled. Taken together, no reasonable and diligent search would have revealed the Federal Tax Lien.

Thus, the form of notice does not comport with the requirement of section 6323(f)(3), as that is interpreted in the IRS' own regulations. Because the notice failed to so comply, plaintiffs Haye and plaintiff Glendale Federal fit within the purview of section 6323(a), and the lien against the property in question is invalid as against them.

Finally, the government argues that a correct title search would not have begun with "Castillo" but rather with "de Castillo" or "Cattillo." They suggest that a reasonable person would have, at the very least, conducted a more thorough search. Furthermore, the government argues, the plaintiffs would have discovered the Federal Tax Lien. However, "Cattillo" is further away in the General Index from the Federal Tax Lien than "Castello." For this reason, the Court believes the government's argument is to no avail, and the plaintiffs' motion for summary judgment is granted.

### D. *Judicial Notice*

█ The plaintiffs request the Court to take judicial notice of the following documents:

(a) Deed to Cattillo, recorded July 15, 1971;

(b) Deed of Trust, trustor Castillo, recorded July 15, 1971;

(c) Notice of Federal Tax Lien, recorded February 26, 1974;

(d) Deed to Isidore Schuman, recorded September 23, 1975;

(e) Deed to plaintiffs Haye, recorded May 17, 1977;

(f) Deed of Trust, trustor plaintiffs Haye, recorded May 17, 1977; and

(g) Los Angeles County General Index (partial) for the years 1967 through 1977, inclusive.

The request for judicial notice arises under Fed.R.Ev. 201, which states, in pertinent part:

A judicially noticed fact must be one not subject to reasonable dispute in that it is either . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed.R.Ev. 201(b)(2). Subsection (d) makes the taking of judicial notice mandatory if the Court is so requested and supplied with the necessary information. Here, because all the deeds are recorded with the Los Angeles County Index, they are not subject to reasonable dispute. Further, they are capable of accurate and ready determination. The same is true for the General Index itself. The Court hereby takes judicial notice thereof, and orders as follows:

1. Plaintiffs Henry T. Haye and Jane S. Haye are purchasers, within the meaning of 26 U.S.C. § 6323(a) and as defined in 26 U.S.C. § 6323(h)(6), of the real property legally described as:

Lots 3 and 4 in Block 10 of Tract No. 10731, in the City of Los Angeles, as per map recorded in Book 202 Pages 20 to 23 inclusive of Maps, in the office of the County Recorder of said County. EXCEPT from said Lots, that portion thereof described as follows:

Beginning at the Northwesterly corner of said Lot 3; thence along the Westerly line of said Lot 3, South 12 degrees 33″ 20″ West 204.35 feet; thence South 80 degrees 12″ 34″ East

133.52 feet to a point in the Easterly line of said Lot 3, that distance thereon South 23 degrees 36″ 41″ West 137.39 feet from the Northerly corner of said Lot 3; thence South 61 degrees 12″ 34″ East 131.70 feet; thence North 40 degrees 34″ 50″ East 124.49 feet to the Northerly line of said Lot 4; thence in a general Westerly direction along the Northerly lines of said Lots 4 and 3 to the point of beginning. [Hereinafter referred to as "said real property"].

2. Plaintiff, Glendale Federal Savings and Loan Association, is a holder of a security interest in said real property, within the meaning of 26 U.S.C. § 6323(a) and as defined in 26 U.S.C. § 6323(h)(1).

3. The lien referred to in the Notice of Federal Tax Lien recorded as document number 2304 at Book M4614, Page 216 of the official records of the County Recorder of Los Angeles County, State of California, is not valid as against plaintiffs, and each of them, on the grounds that said Notice does not comply with the requirements of 26 U.S.C. § 6323(f)(3).

4. Said Notice of Federal Tax Lien does not impart constructive notice of its existence or contents, or of the lien referred to therein, to anyone due to the misspelling of the taxpayer's name therein.

Based upon the foregoing, the Court finds that there is no genuine issue as to any material fact, that plaintiffs herein are entitled to judgment as a matter of law, and therefore orders that judgment be entered accordingly.