[Civ. No. 12090. Fourth Dist., Div. Two. Mar. 8, 1973.]

VERN M. TASCHNER, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF LAGUNA BEACH,
Defendant and Respondent.

**COUNSEL**

Lane, Mathews, Hoag, Overholt & Bonaparte, Lane, Hoag, Overholt & Bonaparte and E. Gene Crain for Plaintiff and Appellant.

Tully H. Seymour and William M. Wilcoxen for Defendant and Respondent.

John C. Hamilton and Bruce A. Beckman as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**TAMURA, J.**—This appeal involves the question whether a general law city may enact a building height limit ordinance through the initiative process. By a petition for writ of mandate in the court below, petitioner sought to challenge the validity of an initiative building height limit ordinance of the City of Laguna Beach. Respondent's general demurrer was sustained without leave to amend and petitioner appeals from the ensuing judgment of dismissal.

In the posture in which this case comes before us, the facts alleged in the petition for writ of mandate must be deemed to be true. (*Isrin* v. *Superior Court,* 63 Cal.2d 153, 155 [45 Cal.Rptr. 320, 403 P.2d 728].) Those facts may be summarized as follows:

The City of Laguna Beach is a general law city. Pursuant to an initiative petition for the adoption of an ordinance which would limit the height of buildings which could be constructed in the city to 36 feet and not more than three stories,[1] respondent called a special election for the pur-

---

[1]The text of the initiative measure is as follows:

"The People of the City of Laguna Beach do ordain as follows:

"Section 1: The people of the City of Laguna Beach hereby find and declare that geologic conditions in the City of Laguna Beach are relatively unstable, that buildings within the City may be affected by seismic disturbances along the Newport-Inglewood fault, and that the ecology of the City of Laguna Beach is unique and dependent upon the preservation of the natural contours of the hills and the integrity of the shoreline. It is further found and declared that said local conditions necessitate more restrictive building height limitations than are imposed by those regulations adopted pursuant to Sections 17921 and 17922 of the California Health and Safety Code.

"Section 2: Chapter 14.42 is hereby added to Title 14 of the Municipal Code of the City of Laguna Beach to read as follows:

"Chapter 14.42—Building Height

"Section 14.42.010. Building height. Notwithstanding any section to the contrary, no person shall contruct any building which has more than three (3) stories above the highest point of grade; nor shall any person construct any building which exceeds thirty-six (36) feet in elevation at its highest point as measured from the highest point of grade; nor shall any person construct any addition to any building which addition causes said building to have more than three (3) stories above the highest point of grade; nor shall any person construct any addition to any building which addition exceeds thirty-six (36) feet in elevation as measured from the highest point of grade.

"Section 14.42.020. Base of measurement. For the purpose of Section 14.42.010 the highest point of grade shall serve as a base of measurement for only that portion of a building which can be encompassed by a square having sides one hundred (100) feet in length. Beyond the perimeter of each such square a new highest point of grade shall be established as a base of measurement.

"Section 14.42.030. Definition of grade. For the purposes of Sections 14.42.010 and 14.42.020 grade is the lowest point of elevation of the finished surface of ground between the exterior wall of a building and a point five (5) feet distant from said wall, or the lowest point of elevation of the finished surface of ground between the exterior wall of a building and the property line if the property line is less than five (5) feet distant from said wall. Where walls are within five (5) feet of a public sidewalk, public alley or public way, the grade shall be the elevation of said public sidewalk, public alley or public way.

"Section 14.42.040. Exceptions. Notwithstanding any section to the contrary, no person or body of persons shall be authorized to waive or grant any exceptions, exemptions or the like to any of the provisions of this chapter.

"Section 3: The repeal of or any amendment to Title 14 of the Municipal Code

pose of submitting the measure to voters of the city. The election was duly held and a majority of those voting in the election voted in favor of the measure.[2]

Following certification of the result of the election, respondent adopted resolutions directing the city planning commission to take appropriate steps toward modification of the city zoning ordinance and land use plan to conform to the initiative measure and extending the moratorium on issuance of building permits for buildings which would exceed the initiative height limitation pending the effective date of the ordinance.[3]

Petitioner alleged he was a qualified elector, taxpayer, and owner of real property within the city. He charged that the initiative was invalid on two grounds: (1) It was enacted without complying with the procedures prescribed by the State Planning and Zoning Law (Gov. Code, § 65000 et seq., hereinafter State Zoning Law) and (2) it violated the State Zoning Law by prohibiting variances and conditional use permits. He alleged that city officials responsible for the administration of the zoning and building ordinances were confused concerning the validity of the initiative measure and that consequently petitioner and other property owners were unable to plan for the future development of their properties. The prayer was for a

of the City of Laguna Beach shall not effect [sic] the validity of Chapter 14.42 thereof.

"Section 4: This ordinance may be amended or repealed only by a vote of the majority of voters on the question in a general or special election.

"The reasons for the proposed ordinance are that the undersigned believe that buildings higher in elevation than is allowable under the proposed ordinance:

·"(1) Constitute a danger to the health, safety and welfare of persons within the City of Laguna Beach;

"(2) Increase hazard to life and limb because of unstable geologic conditions within the City of Laguna Beach and the City's proximity to the Newport-Inglewood fault;

"(3) Increase hazard to life and limb in the event of fire; and,

"(4) Cause added stress and strain on the physical and mental well-being of persons within the City of Laguna Beach by upsetting the unique and delicate ecological balance which exists in Laguna Beach between human beings and their environment."

[2]Prior to the election petitioner obtained from the court below a peremptory writ of mandate enjoining respondent from holding the election. However, on respondent's application to this court, we ordered the trial court to vacate the order enjoining the election stating that while there may be a "serious question" as to the validity of the proposed initiative measure if adopted, prior judicial interference with the electoral process should not be permitted where the amount of public funds to be expended in the conduct of the election was small and where adequate remedies existed to challenge the validity of the ordinance if it be adopted.

[3]Under Election Code section 4015 the initiative ordinance became effective by operation of law on August 14, 1971.

writ "ordering respondent to consider [the initiative] as an illegal ordinance" and not to enforce its provisions.

Respondent interposed a general demurrer and answer to the petition. Following argument on the demurrer, the judge rendered a memorandum opinion in which he decided that the initiative ordinance was valid and that the general demurrer should be sustained without leave to amend. In addition, the judge held that independent of the general demurrer the petition should be denied in the exercise of the court's discretionary power to grant or deny the extraordinary relief sought. Judgment was entered in accordance with the memorandum decision.

Petitioner contends the ordinance is a zoning measure and that its enactment by the initiative process is proscribed by the State Zoning Law, citing *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134 [277 P. 308], and *Laguna Beach Taxpayers' Assn.* v. *City Council* (1960) 187 Cal.App.2d 412 [9 Cal.Rptr. 775].

Respondent urges that apart from the merits of the controversy, the judgment of dismissal was justified on the following procedural grounds: (1) Petitioner lacked standing to maintain the action and (2) mandate was not a proper remedy. On the merits respondent advances two theories in support of the ordinance: (1) The ordinance is not a zoning regulation and (2) considered as a zoning measure, its enactment constituted a valid exercise of the people's constitutional power to legislate by initiative.

For reasons which follow we have concluded (1) that the judgment of dismissal cannot be sustained on the procedural grounds advanced by respondent and (2) that the ordinance is a zoning regulation and as such its enactment by the initiative process was in violation of the State Zoning Law and the due process clause of the Fourteenth Amendment.

I

Preliminarily, we dispose of respondent's procedural contentions.

■ Insofar as standing is concerned, the allegation that petitioner was an elector, taxpayer, and owner of real property in the city was sufficient to give him standing to challenge the validity of the ordinance. (*Tustin Heights Assn.* v. *Bd. of Supervisors*, 170 Cal.App.2d 619, 636-637 [339 P.2d 914].) ■ A private citizen may apply for a writ of mandate "where there is not a plain, speedy, and adequate remedy" at law and he is a "party beneficially interested." (Code Civ. Proc., § 1086.) One who has some special interest to be subserved or some particular right

to be preserved or protected independent of that which he holds in common with the public at large has a sufficient beneficial interest. (*Fuller* v. *San Bernardino Valley Mun. Wat. Dist.*, 242 Cal.App.2d 52, 57 [51 Cal.Rptr. 120]; *Kappadahl* v. *Alcan Pacific Co.*, 222 Cal.App.2d 626, 643 [35 Cal. Rptr. 354]; *Tustin Heights Assn.* v. *Bd. of Supervisors, supra,* 170 Cal. App.2d 619, 636-637.) ■ As a property owner, petitioner's right to be free from height limitations in the development of his property constituted a sufficient special property interest to be subserved to give him standing to seek an adjudication as to the validity of the ordinance. The allegation that city officials were uncertain as to the validity of the ordinance, the consequent inability of petitioner and others similarly situated to plan for future development of their properties, and the desirability of avoiding a multiplicity of actions were sufficient allegations to establish inadequacy of legal remedies.

As to the propriety of the relief sought, respondent contends that petitioner is, in effect, seeking to compel the city council to vacate the ordinance and implementing resolutions. It is urged that such acts being legislative in nature are not controllable by mandate. Assuming that respondent is correct concerning the propriety of the relief sought (see *Hilton* v. *Board of Supervisors,* 7 Cal.App.3d 708, 714 [86 Cal.Rptr. 754]; *Bowles* v. *Antonetti,* 241 Cal.App.2d 283, 286-287 [50 Cal.Rptr. 370]; *Tandy* v. *City of Oakland,* 208 Cal.App.2d 609, 611 [25 Cal.Rptr. 429]) the mere fact that the wrong relief was sought would not have justified the order sustaining a general demurrer without leave to amend.

Frequently a complaint for declaratory relief and petition for mandate are combined in a single action. (15 Cal.Jur.2d, Declaratory Relief, § 27, p. 148.) From the allegations of the petition it is apparent that what petitioner was really seeking was a decree declaring the initiative ordinance invalid and an order enjoining its enforcement. ■ The validity of a zoning ordinance or regulation may be tested by a declaratory relief action (*McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879, 882 [264 P.2d 932]) as well as by mandamus (*Roman Cath. etc. Corp.* v. *City of Piedmont,* 45 Cal.2d 325 [289 P.2d 438]; *Floresta, Inc.* v. *City Council,* 190 Cal.App. 2d 599, 611 [12 Cal.Rptr. 182]). ■ As against a general demurrer, a complaint for declaratory relief may be treated as a petition for mandate (*Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 546 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Salsbery* v. *Ritter,* 48 Cal.2d 1, 7 [306 P.2d 897]; *Boren* v. *State Personnel Board,* 37 Cal.2d 634, 638 [234 P.2d 981]), and where a complaint for declaratory relief alleges facts sufficient to entitle plaintiff to mandate, it is error to sustain a general demurrer without leave to amend. (*Salsbery* v. *Ritter, supra,* p. 7.) We see no reason why

the converse should not hold equally true. As against a general demurrer, a complaint is sufficient if the facts alleged show that plaintiff is entitled to some form of judicially cognizable relief. (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 546; *Boren* v. *State Personnel Board, supra,* 37 Cal. 2d 634, 638.) ■ " '[I]f upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, *or although the plaintiff may demand relief to which he is not entitled under the facts alleged.*' " (Italics supplied.) (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 549.) ■ A complaint for declaratory relief is sufficient if it sets forth facts showing the existence of a controversy relating to the legal rights and duties of the parties under a written instrument and requests that those rights and duties be adjudicated. (*Bennett* v. *Hibernia Bank,* 47 Cal.2d 540, 549-550 [305 P.2d 20]; *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747].) The petition in the instant case contains the requisite allegations for declaratory relief.

Treating the petition as a complaint for declaratory relief, however, raises the further question whether a general demurrer should have been sustained without leave to amend. ■ Strictly speaking, a general demurrer is not an appropriate means of testing the merits of the controversy in a declaratory relief action because plaintiff is entitled to a declaration of his rights even if it be adverse. (*Salsbery* v. *Ritter, supra,* 48 Cal.2d 1, 7; *Bennett* v. *Hibernia Bank, supra,* 47 Cal.2d 540, 550.)[4] However, where the issue is purely one of law, if the reviewing court agreed with the trial court's resolution of the issue it would be an idle act to reverse the judgment of dismissal for a trial on the merits. In such cases the merits of the legal controversy may be considered on an appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend and the opinion of the reviewing court will constitute the declaration of the legal rights and duties of the parties concerning the matter in controversy. (*Cherry* v. *Home Sav. & Loan Assn.,* 276 Cal. App.2d 574, 578 [81 Cal.Rptr. 135]; *Haley* v. *L.A. County Flood Control Dist.,* 172 Cal.App.2d 285, 292-294 [342 P.2d 476]; see *Greenberg* v. *Hollywood Turf Club,* 7 Cal.App.3d 968, 979 [86 Cal.Rptr. 885].)

---

[4]Exceptions to the general rule have been recognized where the complaint shows that all relief would be barred by the statute of limitations or that the entire controversy had been settled by a prior judgment. (*Bennett* v. *Hibernia Bank, supra,* 47 Cal.2d 540, 550.)

The sole matter in controversy in the instant case is one of law; it concerns the validity of the initiative ordinance. Assessment of that issue must necessarily begin with *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, and *Laguna Beach Taxpayers' Assn.* v. *City Council, supra,* 187 Cal.App.2d 412. *Hurst* struck down a comprehensive zoning ordinance enacted by a general law city through the initiative process on two grounds: (1) A general law city cannot enact a zoning ordinance by the initiative process because the power to zone is conferred upon the legislative body of the city by statute, the statute prescribes the method for the adoption of a zoning ordinance, the method is therefore the measure of the power to enact zoning measures and (2) since a zoning ordinance may seriously affect property rights, compliance with statutory notice and hearing requirements is necessary in order to satisfy procedural due process.[5] (207 Cal. 134, 141.) *Laguna* held that a proposed initiative ordinance which would deprive the planning commission of authority to grant variances for the construction of any building more than 50 feet high was a zoning regulation which could only be adopted by the method prescribed by the State Zoning Law and under *Hurst* could not be legislated by initiative.[6]

Respondent seeks to avoid the thrust of *Hurst* and *Laguna* by contending (1) the ordinance is not a zoning ordinance and (2) treated as a zoning ordinance it is nevertheless valid because the rationale of *Hurst* is no longer viable in the light of recent amendments to the State Zoning Law. We proceed to a discussion of those contentions.

II

█ Respondent first contends that the building height limit initiative is not a zoning ordinance and hence its enactment was not subject to the procedural requirements of the State Zoning Law.

---

[5]In *City of Scottsdale* v. *Superior Court* (1968) 103 Ariz. 204 [439 P.2d 290], the Arizona Supreme Court held that the use of the initiative for amending a comprehensive zoning ordinance is in "irreconcilable conflict with the due process clause of the United States Constitution, 14th Amendment." (439 P.2d 290, 293.)

[6]Use of the initiative power to adopt or amend a zoning ordinance has been disapproved in a number of other jurisdictions. (*City of Scottsdale* v. *Superior Court, supra; Dewey* v. *Doxey-Layton Realty Co.* (1954) 3 Utah 2d 1 [277 P.2d 805]; *State* v. *Donohue* (Mo. 1963) 368 S.W.2d 432; and *Hancock* v. *Rouse* (Tex.Civ. App. 1969) 437 S.W.2d 1; 8A McQuillin, Municipal Corporations (3d ed. 1965) § 25.246, p. 168. But see *Russell* v. *Linton* (1953) 67 Ohio L.Abs. 132 [52 Ohio Ops. 228, 115 N.E.2d 429]; *Storegard* v. *Board of Elections of Cuyahoga County* (1969) 22 Ohio Misc. 5 [50 Ohio Ops.2d 228, 255 N.E.2d 880]; *Meridan Development Co.* v. *Edison Tp.* (1966) 91 N.J.Super. 310 [220 A.2d 121]; *City of Des Moines* v. *Manhattan Oil Co.* (1921) 93 Iowa 1096 [184 N.W. 823, 23 A.L.R. 1322]; 2 Metzenbaum, The Law of Zoning (2d ed. 1955) p. 1326.)

A like contention was rejected in _Laguna Beach Taxpayers' Assn._ v. _City Council, supra,_ 187 Cal.App.2d 412. The proponents of the initiative there relied upon former Government Code section 65807 as authority for the enactment of the ordinance. Section 65807[7] then provided: "Except as otherwise provided in this article any amendment to a zoning ordinance may be initiated and adopted as other ordinances are initiated and adopted." It was urged the proposed ordinance was not a building height limit ordinance but merely one forbidding the planning commission to grant a variance permitting the construction of buildings more than 50 feet in height. The court rejected the patently illusory distinction stating that the ordinance regulated the height of buildings and that the mechanics by which it was accomplished did not alter its character as a building height limit regulation. The court pointed out that former section 65804 provided that: "[A]n amendment to a zoning ordinance which . . . imposes any regulation listed in Section 65800 not theretofore imposed . . . shall be initiated and adopted in the same manner as required for the initiation and adoption of the original zoning ordinance," and that former section 65800 listed building height as one of the several types of permissible zoning regulations. Accordingly, the court concluded that the proposed ordinance fell within the "[e]xcept as otherwise provided" clause of section 65807 and could only be adopted by following procedures prescribed for the amendment of a zoning ordinance.

The 1965 revision of the State Zoning Law reenacted the substance of former sections 65807 and 65804 into section 65853 and former section 65800 into 65850. Subdivision (c) of section 65850 permits regulation of "location, _height,_ bulk, _number of stories_ and size of buildings. . . ." (Italics supplied.) Building height regulations being specifically covered by the State Zoning Law, the Laguna building height ordinance is clearly a zoning regulation within the purview of the State Zoning Law.

We recognize the fact that a valid distinction exists between an ordinance regulating land use and one enacted pursuant to a city's general police power to protect public health, safety and morals. Thus an ordinance regulating a business not a nuisance per se but which may become a nuisance may be enacted without complying with the procedural requirements of the State Zoning Law. (_City of Escondido_ v. _Desert Outdoor Advertising, Inc.,_ 8 Cal.3d 785 [106 Cal.Rptr. 172]; _Castiglione_ v. _County of San Diego,_ 15 Cal.App.3d 880, 883-885 [93 Cal.Rptr. 499].) The instant ordinance is clearly not one regulating or prohibiting a nuisance; it

---

[7]All statutory references are to the Government Code unless otherwise indicated.

is a land use regulation of a type specifically covered by the State Zoning Law (§ 65850).

■ Respondent also seeks to uphold the ordinance as a regulation enacted pursuant to the State Housing Law (Health & Saf. Code, § 17910 et seq.). Section 1 of the initiative ordinance contains a declaration purporting to bring it within the scope of a permissible local regulation under Health and Safety Code section 17958.5. That section permits the governing body of a city or county to make modifications in the 1970 Uniform Codes (which the State Housing Law has adopted as state regulations [Health & Saf. Code, § 17922]) in order to meet local conditions.[8] Petitioner urges that the city was not entitled to avail itself of Health and Safety Code section 17958.5 because it had not adopted the 1970 Uniform Building Code at the time the initiative was enacted. The city counters with evidence that it adopted the 1970 Uniform Building Code, with modifications, in December 1971. We need not resolve that issue. Whether or not the city was empowered to make modifications to the Uniform Building Code under section 17958.5, the initiative ordinance cannot be upheld under the guise of a modification to the building code enacted pursuant to the State Housing Law.

Although building codes and zoning regulations are traceable to the police power, building codes are designed to protect the public welfare from a wholly different standpoint from that of zoning laws. Building codes deal with the safety and structure of buildings; they regulate details of construction, use of materials, and electrical, plumbing and heating specifications, all contingent upon the type of occupancy. The purpose of the State Housing Law is to provide for statewide uniformity in such regulations. Zoning ordinances, on the other hand, regulate use of buildings, structures and lands as between various purposes; the location, height, number of stories of buildings and structures; the size of lots and open space requirements, etc. (§ 65850.) On its face the Laguna height initiative is patently a general building height ordinance intended for the preservation of the ecological values of lands within the city. It is not a building code modification; it takes no account of occupancy, structural design, materials, or any other detail of construction other than height. The State Zoning Law being a special statute providing for the type of regulation sought to be legislated by the initiative, its provisions are controlling. (*People* v. *Gilbert,* 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)

---

[8]Health and Safety Code section 17958.5 provides: "In adopting the ordinances or regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in regulations adopted pursuant to Section 17922 as it determines are reasonably necessary because of local conditions."

The initiative must therefore stand or fall as an amendment to a zoning ordinance. We proceed to that issue.

### III

In *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, the court reasoned that voters of a general law city may propose by initiative only such legislation as the governing body is empowered to enact; the mode prescribed by the State Zoning Law for the adoption of local zoning regulations is the measure of that power; the initiative is incompatible with the mode. *Hurst* implies (1) that the Legislature has the power to restrict the exercise of the right of initiative and (2) that it has done so with respect to local zoning legislation. Respondent directs its attack not against the first implication but against the second. It urges that *Hurst* is no longer viable because the Legislature has indicated through its enactment of sections 65800 and 65801 that the State Zoning Law was not designed to forbid local zoning legislation by initiative.

Section 65800 provides: "It is the purpose of this chapter to provide for the adoption and administration of zoning laws, ordinances, rules and regulations by counties and cities, as well as to implement such general plan as may be in effect in any such county or city. Except as provided in Article 4 (commencing with Section 65910) of this chapter, the Legislature declares that in enacting this chapter it is its intention to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters." Section 65801, quoted in full below,[9] provides in substance that courts shall not invalidate local zoning actions for nonprejudicial procedural errors, irregularities, or omissions.

---

[9]Government Code section 65801 reads as follows: "Formal rules of evidence or procedure which must be followed in court shall not be applied in zoning matters, except to the extent that a county or city may provide therefor. No action, inaction or recommendation regarding any zoning matter by any legislative body or any administrative body or official of any county or city shall be held void or invalid or be set aside by any court on the ground of the improper admission or rejection of evidence or by reason of any error, irregularity, informality, neglect or omission (hereinafter called 'error') as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports. recommendations, appeals or any matters of procedure whatever, including, but not limited to, those included in this section, unless after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of was prejudicial, and that by reason of such error the party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error had not occurred or existed. There shall be no presumption that error is prejudicial or that injury was done if error is shown."

 Respondent urges that the foregoing sections signify a legislative intent to abolish the *Hurst* rule foreclosing general law cities from enacting local zoning legislation by the initiative process.[10] We disagree.

Sections 65800 and 65801 were added as part of the 1965 revision of the State Zoning Law. (Stats. 1965, ch. 1880, § 6.) Although we have been unable to find any legislative history relating to the enactment of the two sections, we discern two legislative objectives: (1) To dispel the erroneous assumption that the power of general law cities (and counties) to enact zoning regulations is conferred by statute and (2) to correct the notion stemming from that assumption that any minor deviation from the mode prescribed by the State Zoning Law is a jurisdictional error which is fatal to the zoning action.

 The power of general law cities (and counties) to zone is derived from the broad police powers conferred upon them by the state Constitution (Cal. Const., art XI, § 7;[11] *Miller* v. *Board of Public Works,* 195 Cal. 477, 488-489 [234 P. 381, 38 A.L.R. 1479]; see *Euclid* v. *Ambler Co.,* 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114]); it is not a power bestowed by the Legislature *(Scrutton* v. *County of Sacramento,* 275 Cal.App.2d 412, 417 [79 Cal.Rptr. 872]; *People* v. *Johnson,* 129 Cal.App.2d 1, 5-6 [277 P.2d 45]). In the past, however, courts frequently held that a general law city acquired its zoning powers solely from the Legislature. (Cal. Zoning Practice (Cont. Ed. Bar 1969) § 4.16, p. 113; e.g., *Williams* v. *City of San Bruno,* 217 Cal.App.2d 480, 486 [31 Cal.Rptr. 854]; *Hein* v. *City of Daly City,* 165 Cal.App.2d 401, 405-406 [332 P.2d 120].) This led to a frequent judicial invalidation of local zoning actions for technical procedural errors or omissions on the theory that any departure from strict compliance with state procedural requirements was a fatal jurisdictional error (e.g., *Williams* v. *City of San Bruno, supra,* see *City of Sausalito* v. *County of Marin,* 12 Cal.App.3d 550 [90 Cal.Rptr. 843]; Cal. Zoning Practice, *supra,* § 4.17, pp. 113-114). It also led to attacks upon any local zoning regulation of a type not expressly provided for by the

[10]The referendum power extends to zoning ordinances in general law cities (and counties) (*Wheelright* v. *County of Marin,* 2 Cal.3d 448, 457-458 [85 Cal.Rptr. 809, 467 P.2d 537]; *Johnston* v. *City of Claremont,* 49 Cal.2d 826, 837 [323 P.2d 71]; *O'Loane* v. *O'Rourke,* 231 Cal.App.2d 774, 783 [42 Cal.Rptr. 283]), as well as charter cities (*Dwyer* v. *City Council,* 200 Cal. 505, 515 [253 P. 932]). Use of the referendum in general law cities does not offend the *Hurst* rationale because it does not circumvent the procedural requirements of the state law, those procedures having been complied with in the enactment of the ordinance. (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 836.)

[11]Article XI, section 7 of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

State Zoning Law on the ground that legislative silence meant a denial of the power to impose the regulation. (*Scrutton* v. *County of Sacramento, supra,* 275 Cal.App.2d 412, 417.) Section 65800 now makes it clear that the provisions of the State Zoning Law pertaining to the adoption of local zoning regulations were not intended as specific grants of authority but as minimum standards to be observed in local zoning practices, reserving in cities and counties "the maximum degree of control over local zoning matters," including the power to enact supplementary substantive as well as procedural regulations not inconsistent with state law. (*Scrutton* v. *County of Sacramento, supra,* 275 Cal.App.2d 412; Cal. Zoning Practice, *supra,* § 4.12, p. 111.) Section 65801 was designed to avoid recurrence of decisions invalidating local zoning actions for non-prejudicial procedural irregularities or omissions.

However, we cannot read into those sections a legislative intention to permit local zoning legislation through the initiative process. While section 65800 indicates that the Legislature did not intend to interfere with municipal home rule in zoning matters, it does at the same time declare in effect that local zoning powers must be exercised in conformity with the minimum standards prescribed by state law. Furthermore, section 65853 (the 1965 reenactment of former § § 65804 and 65807) provides: "A zoning ordinance or an amendment to a zoning ordinance, which amendment changes any property from one zone to another or imposes any regulation listed in Section 65850 not theretofore imposed or removes or modifies any such regulation theretofore imposed shall be adopted in the manner set forth in Sections 65854 to 65857, inclusive. Any other amendment to a zoning ordinance may be adopted as other ordinances are adopted." The referenced sections provide for notice and hearing by the planning commission (§ 65854), recommendation by the planning commission to the legislative body (§ 65855), notice annd hearing by the legislative body (§ 65856), and for the actions the legislative body may take on the planning commission's recommendation (§ 65857). In commenting on the notice and hearing requirements of the 1917 Zoning Act, *Hurst* observed that "[t]he Legislature may have considered, and very properly so, that in the enactment of a zoning ordinance property rights might be seriously affected." (*Hurst* v. *City of Burlingame, supra,* 207 Cal. 134, 141.) Section 65853 is a legislative response to the court's supposition in *Hurst.* The section was obviously designed to assure property owners the procedural safeguards provided by the State Zoning Law where a zoning ordinance or an amendment to a zoning ordinance is one which significantly affects land use. In view of the provisions of section 65853, it cannot be reasonably inferred that by enacting sections 65800 and 65801

the Legislature intended to sanction the enactment of such ordinances by a legislative process which bypasses the procedural safeguards of the state law.

Respondent interprets sections 65800 and 65801 as legislative signals to the courts that local zoning ordinances enacted through the initiative process should no longer be invalidated simply because it bypasses statutory procedural requirements. It is urged that interested persons can suffer no substantial injury because the election process itself provides the equivalent safeguards afforded by state zoning law procedures. We are unpersuaded. The kind of public debate on the merits of a proposed zoning measure afforded by the election process, including the limited opportunity for the submission of written arguments to the voters, cannot be equated with a dispassionate study, evaluation and report upon the proposal by a staff of planning experts (§ 65804), notice and hearing before the planning commission (§ 65854), written recommendation by the planning commission with reasons for its recommendation (§ 65855), and notice and hearing before the legislative body (§ 65856). Furthermore, it is common knowledge that election campaigns cost money and that the extent to which one may be heard in an election too often depends on the size of one's pocketbook whereas planning commissions and legislative bodies are required by law to afford all interested persons a full and fair hearing on the merits of their respective claims. Moreover, the election offers the voters but a single choice, to accept or reject the proposal in its entirety. The legislative body, however, is empowered to modify (as well as approve or reject) a recommendation of the planning commission thereby enabling it to consider and take into account in its actions the legitimate claims and suggestions of those who would be affected by the proposal even though they may represent but a small segment of the electorate. Section 65801 provides that a local zoning action shall not be invalidated unless the court should be of the opinion that the error or omission complained of was prejudicial, that the party complaining suffered substantial injury by reason of the error "and that a different result would have been probable if such error had not occurred. . . ." Where interested persons have been denied notice and opportunity to have their claims, suggestions and welfare considered by a planning commission or a legislative body in connection with a contemplated zoning action, it is reasonable to conclude that a different result would have been probable had such notice and opportunity to be heard been afforded. (See *Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 550.) In the instant case a different result— a regulation more narrowly drawn, if any—may well have been probable had the procedural requirements of the State Zoning Law been observed.

More importantly, to extend the curative scope of section 65801 to cover the avoidance of state procedural requirements by the use of the initiative process would be stretching the section beyond constitutionally permissible limits. Our courts have repeatedly declared that due process requires that affected property owners be afforded notice and opportunity to be heard before a local ordinance which substantially affects land use is adopted. (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, 548-549; *Gilgert* v. *Stockton Port District,* 7 Cal.2d 384, 391 [60 P.2d 847]; *Silvera* v. *City of South Lake Tahoe,* 3 Cal.App.3d 554, 558 [83 Cal.Rptr. 698]; *Berrata* v. *Sales,* 82 Cal.App. 324, 327 [255 P. 538]; see *City of Escondido* v. *Desert Outdoor Advertising, Inc., supra,* 8 Cal.3d 785, 790; *Metro Realty* v. *County of El Dorado,* 222 Cal.App.2d 508, 518 [35 Cal. Rptr. 480]; *Kissinger* v. *City of Los Angeles,* 161 Cal.App.2d 454, 464 [327 P.2d 10].) In fact, as noted earlier in this opinion, the *Hurst* decision was predicated on due process grounds as well as on the theory that the method prescribed by the State Zoning Law for the enactment of a local zoning ordinance is the measure of the power of general law cities to legislate on zoning matters. While sections 65800 and 65801 may have vitiated the assumption which formed the basis for the rationale that the mode is the measure of the power,[12] the due process basis of the *Hurst* decision not only retains its original vigor, our high court has recently given it new emphasis and dimension.

In holding that due process entitled nonresident adjacent landowners to notice and opportunity to be heard on an application for a conditional use permit, the court in *Scott* v. *City of Indian Wells, supra,* 6 Cal.3d 541, reminds us that: " '[C]ommon sense and wise public policy . . . require an opportunity for property owners to be heard before ordinances which substantially affect their property rights are adopted. . . .' (*Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 464 [327 P.2d 10].) Indeed, the due process clause of the Fourteenth Amendment requires 'at a minimum . . . that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing. . . .' (*Mullane*

---

[12] *Bayless* v. *Limber,* 26 Cal.App.3d 463 [102 Cal.Rptr. 647], suggests that section 65801 may have rendered the viability of *Hurst* and *Laguna* questionable. (P. 649, fn. 5.) *City of Sausalito* v. *County of Marin, supra,* 12 Cal.App.3d 550, contains a like hint. The court states that section 65801 was enacted to avoid judicial decisions invalidating local zoning actions for "technical procedural omissions," citing among the examples *Hurst.* The court observed that those decisions (including *Hurst*) voiding local zoning actions for procedural errors or omissions "rested upon essentially jurisdictional grounds" and construed section 65801 as permitting validation of zoning actions despite procedural omissions formerly deemed "jurisdictional" if such omission could have been authorized by the Legislature in the first instance without violating due process. (12 Cal.App.3d 559.)

v. *Central Hanover Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 873, 70 S.Ct. 652].) Zoning does not deprive an adjacent landowner of his property, but it is clear that the individual's interest in his property is often affected by local land use controls, and the 'root requirement' of the due process clause is 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest . . . justifies postponing the hearing until after the event. . . .' (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 379 [28 L.Ed.2d 113, 119, 91 S.Ct. 780, 786]; italic in original, fns. omitted.)" (6 Cal.3d 541, 548-549.)

In *City of Escondido* v. *Desert Outdoor Advertising, Inc., supra,* 8 Cal.3d 785, the court upheld a general law city ordinance regulating placement of billboards and signs along freeways against an attack upon its validity for noncompliance with State Zoning Law procedures but in so doing declared: "We emphasize that ordinarily municipalities must follow statutory or charter zoning procedures strictly whenever they propose a substantial interference with land use, for such procedures are constitutionally mandated to insure that private property owners receive due process of law. (See *Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Hurst* v. *City of Burlingame,* 207 Cal. 134, 141 [277 P. 308]; 55 Cal.Jur.2d, Zoning, § 109; McQuillin, Municipal Corporations, §§ 25.40, 25.46.) In the instant case, however, defendants have failed to establish any such substantial interference. . . ." (*City of Escondido* v. *Desert Outdoor Advertising, Inc., supra,* 8 Cal.3d 785, 790.)

Respondent urges that the recent case of *Bayless* v. *Limber, supra,* 26 Cal.App.3d 463 [hg. den.] is inconsistent with the *Hurst* due process rationale. We do not so view that case. *Bayless* was an original mandamus proceeding in the Court of Appeal to compel the city council and the city clerk of a charter city to process an initiative petition proposing an amendment to a zoning ordinance to prohibit oil well drilling in areas zoned residential. The court issued a peremptory writ holding that enactment of the measure by the initiative process would not result in a denial of procedural due process because zoning is a legislative function and ordinarily notice and hearing are not due process prerequisites to legislative action. *Bayless* is not dispositive of the question whether use of the initiative process for the enactment of a local zoning ordinance which *substantially interferes with land use* results in a denial of due process.[13] First, while

---

[13]The resolution of the due process issue was not essential to the *Bayless* decision. Even though a serious question may exist concerning the validity of a proposed initiative measure it has long been the policy of the courts of this state to refrain from prior interference with the people's reserved power to legislate where adequate

an ordinance prohibiting oil well drilling may on its face appear to constitute substantial interference with property rights, under the peculiar facts in *Bayless* the practical effect of the proposed measure may have been minimal. For many years oil well drilling had been prohibited in the city except at four specific drill sites and the initiative proceeding was triggered by a sudden change in policy by the city council. The initiative was apparently in the nature of a delayed referendum. Secondly, in its most recent pronouncement on the procedural due process issue in zoning matters, the Supreme Court has "emphasized" that "whenever [municipalities] propose a substantial interference with land use" "statutory or *charter zoning procedures*" must ordinarily be followed because such procedures are "constitutionally mandated to insure . . . due process of law" to property owners. (Italics supplied.) (*City of Escondido* v. *Desert Outdoor Advertising, Inc., supra,* 8 Cal.3d 785, 790.) The fact that the enactment of a local zoning ordinance has been characterized as a legislative function (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 834; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 590]) is not determinative of the right of property owners to notice and opportunity to be heard. The clear implication of *Escondido* and *Scott* is that if a local ordinance substantially interferes with land use, due process requires compliance with statutory or charter zoning procedures.[14]

Respondent also cites *Adler* v. *City Council,* 184 Cal.App.2d 763 [7 Cal.Rptr. 805], for the proposition that the enactment of a rezoning ordinance by a charter city without notice and hearing is not violative of procedural due process. (See Cal. Zoning Practice (Cont. Ed. Bar 1969) *supra,* § 10.35, p. 448.) Respondent's reliance on *Adler* is misplaced. The main issue in *Adler* was whether a Culver City ordinance rezoning a parcel of land was invalid because of an alleged violation of the Brown Act by members of the city planning commission. The court held that the alleged violation, if it occurred, had no effect on the validity of the rezoning

---

remedies exist to challenge the validity of the measure if it is adopted by the voters. (*Kevelin* v. *Jordan,* 62 Cal.2d 82, 83 [41 Cal.Rptr. 169, 396 P.2d 585]; see *Mulkey* v. *Reitman,* 64 Cal.2d 529, 535 [50 Cal.Rptr. 881, 415 P.2d 825].)

[14]Although the facts in *Bayless* v. *Limber, supra,* 26 Cal.App.3d 463, are not entirely clear, it appears that the four original drill sites were not affected by the initiative measure which only prohibited oil well drilling in residential areas of the city. By ordinance effective December 24, 1970, oil well drilling was placed on an unclassified permit basis and *subsequently* the city council granted a permit to an oil company to drill numerous wells at a site zoned single family residential and entirely surrounded by residential property. The issuance of this particular permit rather than prior oil drilling activities at the four original drill sites appeared to foment the initiative petition. It does not appear that any expenses had been incurred or work undertaken in reliance upon the permit.

ordinance. The second issue involved the validity of a section of the municipal zoning ordinance which amended a prior provision fixing the number of votes of the city council members required to reverse a recommendation of the planning commission. In rejecting the contention that the section was unconstitutional because it was enacted without prior notice and hearing, the court pointed out that the charter required notice and hearing for variances or a change of zone but not "to changes in the administrative procedure of the basic ordinance, which are legislative and not administrative in their character." (*Adler* v. *City Council, supra,* 184 Cal.App.2d 763, 777-778.) *Adler* thus merely stands for the proposition that unless the charter otherwise provides, a charter city may adopt procedural amendments to its zoning ordinance without notice and hearing.[15]

Respondent also cites *Cow Hollow Improvement Club* v. *Board of Permit Appeals,* 245 Cal.App.2d 160 [53 Cal.Rptr. 610], in support of the proposition that a charter city may adopt a rezoning amendment without notice and hearing. The case does not stand for that broad proposition. It simply held that in enacting a new comprehensive zoning ordinance affecting every property in the city, personal notice of hearing is not required to be given to the owner of each parcel of land in the city and that notice by publication is sufficient to satisfy due process.

Despite the fact that it has long been judicially recognized that voters of a charter city have the right to legislate on zoning matters through the initiative process unless its exclusion is compelled by the charter, we have found no reported decision in which the use of the initiative has been approved to enact an amendment to a zoning ordinance to rezone properties or to enact a zoning regulation which significantly restricts land use.

One of the leading cases in California on the use of the initiative in zoning matters in charter cities is *Fletcher* v. *Porter,* 203 Cal.App.2d 313 [21 Cal.Rptr. 452]. The court upheld the use of the initiative method to enact an amendment to a zoning ordinance to redefine the powers and duties of the planning commission, to adopt the provisions of the State Zoning Law respecting the procedure for the adoption of a master plan, and to impose a limited moratorium on rezoning. However, the court was careful to point out that since the proposed measure did not interfere with land use its enactment by the initiative process would not violate due process. "Appellants' fourth contention, that a city ordinance which amends

---

[15]Procedural amendments to a zoning ordinance may be adopted in general law cities without complying with State Zoning Law procedures. Section 65853 provides that any amendment to a zoning ordinance other than changes in zone of property or imposition of any regulation listed in section 65850, "may be adopted as other ordinances are adopted." The initiative power would therefore extend to ordinances effecting a procedural change.

zoning legislation cannot be subject to the initiative, because such a method violates due process, assumes that the ordinance is a zoning ordinance. Yet the ordinance freezes the property during the necessary interim period; *it does not change the use of land or adversely affect the rights of property holders.* Appellants' cases (*Hurst* v. *City of Burlingame, supra,* 207 Cal. 134; *Chase* v. *Kalber* (1915) 28 Cal.App. 561 [153 P. 397]) concerned attempts which had been made to change the permissive use of land. Appellants' additional cases holding that a property owner must be accorded notice and hearing as to the zoning of property (*Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 391 [60 P.2d 847]; *Berrata* v. *Sales* (1927) 82 Cal.App. 324, 327 [255 P. 538]; *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 464 [327 P.2d 10]), fail to be pertinent for the same reason." (Italics supplied.) (*Fletcher* v. *Porter, supra,* 203 Cal.App.2d 313, 324-325.)

The most recent decision in which an initiative zoning measure in a charter city was upheld is *Duran* v. *Cassidy,* 28 Cal.App.3d 574 [104 Cal.Rptr. 793]. The proposal was simply one to prohibit the City of Visalia from constructing and operating a municipal golf course on city regional park property. The court rejected a contention that since the measure purported to amend the city's general plan its enactment by initiative without notice and hearing was improper. The measure, however, would not have rezoned private properties or otherwise have imposed restrictions on private land use.

The foregoing analysis reveals that the charter city zoning initiative cases are not inconsistent with the due process holding of *Hurst.*

We conclude that both section 65853 and due process required compliance with State Zoning Law procedures in the enactment of the Laguna Beach building height regulation. The procedural requirements being constitutionally mandated, their omission cannot be cured by the validating provision of section 65801. (*Miller* v. *McKenna,* 23 Cal.2d 774, 781-782 [147 P.2d 531]; *City of Sausalito* v. *County of Marin, supra,* 12 Cal. App.3d 550, 559; Cal. Zoning Practice (Cont. Ed. Bar 1969) *supra,* § 10.35, p. 448.) While it is the responsibility of the courts to be zealous in preserving and upholding the exercise of the initiative power reserved to the people by our state Constitution (*McFadden* v. *Jordan,* 32 Cal.2d 330, 332 [196 P.2d 787], when the exercise of the initiative power is incompatible with the due process clause of the Fourteenth Amendment, the latter must prevail.

## Disposition

Judgment is reversed with directions to overrule respondent's demurrer and to take further proceedings in this matter consistent with the views herein expressed.

Kerrigan, Acting P. J., and Gabbert, J., concurred.

A petition for a rehearing was denied March 27, 1973, and respondent's petition for a hearing by the Supreme Court was denied May 16, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.