TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-708 |
| of | : | |
| | : | March 7, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE CALIFORNIA BUILDING STANDARDS COMMISSION has requested an opinion on the following question:

As a condition of issuing a building permit for construction of a single-family residence or other building, may a city or county require by ordinance the installation of an emergency water supply, such as a 5,000 gallon water reservoir?

THE HONORABLE DAN HAUSER, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

As a condition of issuing a building permit for the construction of a single-family residence, may a city or county require by ordinance the installation of a paved driveway from the property line to the residence for emergency vehicle access?

CONCLUSIONS

1.    As a condition of issuing a building permit for the construction of a single-family residence or other building, a city or county may require by ordinance the installation of an emergency water supply, such as a 5,000 gallon water reservoir.   Specific findings may be necessary for adoption of the ordinance depending upon the particular facts and circumstances.

2. As a condition of issuing a building permit for the construction of a single-family residence, a city or county may require by ordinance the installation of a paved driveway from the property line to the residence for emergency vehicle access. Specific findings may be necessary for adoption of the ordinance depending upon the particular facts and circumstances.

ANALYSIS

The two questions presented for resolution concern the authority of cities and counties to impose certain conditions when issuing building permits. The conditions would require an emergency water supply, such as a private water reservoir, and a paved access road for the proposed building structure. Both conditions would serve to protect the building and its occupants in case of a fire or other emergency. We conclude that cities and counties have the constitutional authority to impose the two requirements when issuing building permits.

1. Emergency Water Supply

The first question presents an issue similar to one we addressed in a 1985 opinion. In 68 Ops.Cal.Atty.Gen. 225 (1985), we were asked whether a fire protection district could require the installation of an emergency water supply at the time of construction of every building in the district. We explained the factual situation therein as follows:

"In many rural communities with established subdivisions of large lot parcels and no public or private water systems, the availability of a water source sufficient to fight a fire at each building site is of major concern. Normally, the fire truck itself would have a limited supply of 500 to 1,000 gallons, and water from wells available at the site would be of limited supply and have insufficient pressure to prove effective. One alternative in solving this problem would be to have a water reservoir of, for example, 5,000 gallons installed at each building site which a fire truck could drain with its pumps." (*Id*., at p. 226.)[1]

The general authority of cities and counties to adopt local ordinances is set forth in section 7 of article XI of the Constitution:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

This constitutional authority, often referred to as the "police power," is subject only to the limitations that it be exercised within territorial limits and be subordinate to state law. As explained by the Supreme Court in *Candid Enterprises, Inc.* v. *Grossmont Union High School District* (1985) 29 Cal.3d 878, 885: "Counties and cities have plenary authority to govern, subject only to the limitation that they

_____

[1] In our 1985 opinion, we concluded that a fire protection district did not have the statutory authority to impose such a requirement. The Legislature has since granted fire protection districts the necessary authority. (Health & Saf. Code, § 13869.7.)

exercise this power within their territorial limits and subordinate to state law." Except for these limitations, the police power authority of a city or county "is as broad as the police power exercisable by the Legislature itself." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140.)

Of course, the exercise of the police power by the Legislature or by cities and counties is subject to the limitations imposed by the state and federal Constitutions. Among these limitations is the requirement that the legislation be rationally related to a legitimate governmental concern. (*Metromedia, Inc.* v. *City of San Diego* (1981) 453 U.S. 490, 415; *Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 68.) We assume for purposes of this analysis that the requisite need for an emergency water supply may be established in the particular circumstances.

The regulation of land development is a traditional subject for the exercise of the constitutional police power by a city or county. (See *Griffin Development Company* v. *City of Oxnard* (1985) 39 Cal.3d 256, 261-264; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 868-869; *Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at 140.) The courts have upheld numerous types of conditions imposed by cities and counties when approving building permits. (See, e.g., *Shelby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110 [dedication of a right of way]; *Friends of Westwood, Inc.* v. *City of Los Angeles* (1987) 191 Cal.App.3d 259 [street access points and internal parking circulation]; *Slagle Construction Co.* v. *County of Contra Costa* (1977) 67 Cal.App.3d 559 [burial of overhead utility lines].)[2] More particularly, a local ordinance which is intended to protect the public health, safety, and welfare, such as one prescribing building standards relating to fire safety, would fall within a city's or county's police power authority. (58 Ops.Cal.Atty.Gen. 13, 14 (1975); cf., *People ex rel. Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484; *People* v. *Mueller* (1970) 8 Cal.App.3d 949, 954, fn. 1.) The ordinance would be presumed valid so long as it did not conflict with general state law. (Cf., *Stanislaus Co. etc. Assn.* v. *Stanislaus* (1937) 8 Cal.2d 378, 383-384; *Freeman* v. *Contra Costa County Water District* (1971) 18 Cal.App.3d 404, 408.)

We have not been apprised of any state law that would be in conflict with the proposed emergency water supply ordinance in question. We have examined the codes and have found none. Nevertheless, a discussion of several statutory provisions appears appropriate to dispel any uncertainty.

In 68 Ops.Cal.Atty.Gen. 225, *supra*, we indicated that requiring an emergency water supply could in some circumstances be considered a "building standard" for purposes of the State Building Standards Law (Health & Saf. Code, §§ 18901-18949.6).[3] Section 18909, subdivision (b) provides: ". . . `building standard' includes architectural and design functions of a building or structure . . . ." The building standards published in the State Building Standards Code "shall be binding on the state and other public agencies . . . ." (§ 18944.5.) While the code does not contain a building standard for an emergency water supply, section 18941.5, subdivision (b) states:

---

[2]Under Government Code section 65909, subdivision (a), a city or county may not "condition the issuance of any building . . . permit . . . on . . . [t]he dedication of land for any purpose not reasonably related to the use of the property for which the . . . building . . . permit is requested." (See *Dolan* v. *City of Tigard* (1994) 512 U.S. ___ [129 L.Ed.2d 304]; *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677]; *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 936-938.)

[3]All references hereafter to the Health and Safety Code are by section number only.

"Neither the State Building Standards Law contained in this part, nor the application of building standards contained in this section, shall limit the authority of a city, county, or city and county to establish more restrictive building standards reasonably necessary because of local climatic, geological, or topographical conditions. . . ."

Similarly, the State Housing Law (§§ 17910-17995.5; see *Taschner* v. *City Council* (1973) 31 Cal.App.3d 48, 60), which would be applicable to single-family residences, allows cities and counties to adopt more restrictive building standards than those adopted on a statewide basis by the Department of Housing and Community Development.   Although the latter has not adopted a building standard for an emergency water supply, section 17958.5, subdivision (a) states:

". . . a city or county may make changes or modifications in the requirements contained in the provisions published in the California Building Standards Code and the other regulations adopted [by the Department of Housing and Community Development] pursuant to Section 17922 as it determines, pursuant to the provisions of Section 17958.7, are reasonably necessary because of local climatic, geological, or topographical conditions.

"For purposes of this subdivision, a city and county may make reasonably necessary modifications to the requirements, adopted pursuant to Section 17922, contained in the provisions of the code and regulations on the basis of local conditions."

Subdivision (a) of section 17958.7 states in turn:

". . . the governing body of a city or county, before making any modifications or changes pursuant to Section 17958.5, shall make an express finding that such modifications or changes are reasonably necessary because of local climatic, geological or topographical conditions.  Such a finding shall be available as a public record.  A copy of such findings, together with the modification or change expressly marked and identified to which each such finding refers, shall be filed with the department.  No such modification or change shall become effective or operative for any purpose until the finding and the modification or change have been filed with the department."

The Legislature has accorded similar treatment to the fire safety standards adopted by the State Fire Marshal for various types of buildings.  (See, e.g., §§ 13108, 13143, 13143.6, 13211, 17921; 72 Ops.Cal.Atty.Gen. 180 (1989).)   Again, although the State Fire Marshal has not adopted an emergency water supply requirement, subdivision (a) of section 13143.5 provides:

"Notwithstanding Part 2 (commencing with Section 13100) of Division 12, Part 1.5 (commencing with Section 17910) of Division 13, and Part 2.5 (commencing with Section 18901) of Division 13, any city, county, or city and county may, by ordinance, make changes or modifications that are more stringent than the requirements published in the California Building Standards Code relating to fire and panic safety and the other

regulations adopted pursuant to this part. Any changes or modifications that are more stringent than the requirements published in the California Building Standards Code relating to fire and panic safety shall be subject to subdivision (b) of Section 18941.5."[4]

Consistent with this legislative approach, the statutory scheme (Pub. Resources Code, §§ 4290-4299) authorizing the State Board of Forestry to adopt fire safety standards for state responsibility area lands (see 76 Ops.Cal.Atty.Gen. 19 (1993)) allows the board to set standards for "[m]inimum private water supply reservoirs for emergency fire use" (Pub. Resources Code, § 4290, subd. (a)), but then specifies that such standards "do not supersede local regulations which equal or exceed" the minimum standards established by the board (Pub. Resources Code, § 4290, subd. (b)).

Because each of these statutory schemes expressly authorizes or recognizes local legislation, the exercise by a city or county of its constitutional police power authority in these areas would not be "in conflict with general laws." (Cal. Const., art. XI, § 7.) As stated by the Supreme Court in *People ex rel. Deukmejian* v. *County of Mendocino*, *supra*, 36 Cal.3d at 485: "Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations."

Finally, we note "the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit. [Citations.]" (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 795.) On occasion, the Legislature has changed the general rule. Government Code section 65961, for example, states in part:

"Notwithstanding any other provision of law, upon approval or conditional approval of a tentative map for a subdivision of single- or multiple-family residential units, or upon recordation of a parcel map for such a subdivision for which no tentative map was required, during the five year period following recordation of the final map or parcel map for the subdivision, a city, county, or a city and county shall not require as a condition to the issuance of any building permit or equivalent permit for such single- or multiple-family residential units, conformance with or the performance of any conditions that the city or county could have lawfully imposed as a condition to the previously approved tentative or parcel map. Nor shall a city, county, or city and county withhold or refuse to issue a building permit or equivalent permit for failure to conform with or perform any conditions that the city, county, or city and county could have lawfully imposed as a condition to the previously approved tentative or parcel map. However, the provisions of this section shall not prohibit a city, county, or city and county from doing any of the following:

---

[4]Our 1989 opinion concluded that cities and counties do not have the authority to modify the fire safety standards adopted by the State Fire Marshal. (72 Ops.Cal.Atty.Gen., *supra*, 180.) With its amendment in 1990 (Stats. 1990, ch. 1111, § 3), section 13143.5 now grants such statutory authority to cities and counties. Of course, requiring an emergency water supply must reasonably be viewed as "more restrictive," "more stringent," and a "change" in standards that lack such a requirement.

"(a) Imposing conditions or requirements upon the issuance of a building permit or equivalent permit which could have been lawfully imposed as a condition to the approval of a tentative or parcel map if the local agency finds it necessary to impose the condition or requirement for any of the following reasons:

"(1) A failure to do so would place the residents of the subdivision or of the immediate community, or both, in a condition perilous to their health or safety, or both.

"(2) The condition is required in order to comply with state or federal law.

"(b) Withholding or refusing to issue a building permit or equivalent permit if the local agency finds it is required to do so in order to comply with state or federal law.

"(c) Assuring compliance with the applicable zoning ordinance."

Depending upon the individual circumstances, the limitations of Government Code section 65961 may require consideration when adopting an ordinance mandating the installation of an emergency water supply as a condition of issuing a building permit. (See *Golden State Homebuilding Associates* v. *City of Modesto* (1994) 26 Cal.App.4th 601, 607-613.)[5]

In answer to the first question, therefore, we conclude that as a condition of issuing a building permit for the construction of a single-family residence or other building, a city or county may require by ordinance the installation of an emergency water supply, such as a 5,000 gallon water reservoir.[6] Specific findings may be necessary for adoption of the ordinance depending upon the particular facts and circumstances.

2. A Paved Driveway

The second question posed is whether a city or county may require, as a condition of issuing a building permit for a single-family residence, the installation of a paved driveway from the property line to the residence in order to provide emergency vehicle access.

Our analysis of the first question provides the answer to the second question. A city or county has constitutional authority to enact ordinances protecting the public health, safety, and welfare

---

[5]The judicially developed doctrine of "vested rights" which is founded in the common law and based upon the principle of equitable estoppel would not be applicable here, since "the right generally has been held to arise only upon issuance of a building permit or other final discretionary approval, and is limited in scope to the terms of the permit itself." (*Golden State Homebuilding Associates* v. *City of Modesto*, *supra*, 26 Cal.App.4th at 607.)

[6]Because of the conclusion reached, we need not address the "home rule" constitutional authority of charter cities and counties to enact ordinances inconsistent with general law. (See Cal. Const., art XI, §§ 3-6; *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1206-1208; *Agnew* v. *City of Los Angeles* (1961) 190 Cal.App.2d 820, 827.)

of its inhabitants.  The obvious purpose of requiring paved emergency access to a single-family residence would be to protect the health, safety, and welfare of its occupants.

As with a local ordinance imposing an emergency water supply requirement, we must determine if any general state laws have been enacted which might be "in conflict with" an ordinance requiring a paved driveway.  No law has been brought to our attention providing such a conflict; we have found none.

While an emergency water supply requirement might involve a "building standard," a paved driveway requirement would not.  (§§ 18908-18909.)   Assuming a paved driveway requirement is imposed as a fire safety standard by the State Fire Marshal (see Cal. Code Regs., tit. 19, § 3.05) or the State Board of Forestry, the state laws governing such standards authorize local legislation.  (§ 13143.5; Pub. Resources Code, § 4290.)   Accordingly, no preemption of local ordinances may be found in these state laws.  (See *People ex rel. Deukmejian* v. *County of Mendocino*, *supra*, 36 Cal.3d at 485.)   Of course, the local standard must be reasonable and meet any applicable statutory conditions.

In answer to the second question, therefore, we conclude that as a condition of issuing a building permit for the construction of a single-family residence, a city or county may require by ordinance the installation of a paved driveway from the property line to the residence for emergency vehicle access.  Specific findings may be necessary for adoption of the ordinance depending upon the particular facts and circumstances.

\* \* \* \* \*